OPINION
{¶ 1} Appellant, John Pfeiffer, appeals a Marion County Common Pleas Court, Juvenile Division, judgment, sustaining in part and vacating in part the magistrate's decision designating Appellee, Andrea Caskey, residential parent and terminating the shared-parenting plan. Specifically, the judgment sustained the magistrate's decision designating Caskey residential parent and terminating the shared-parenting plan, but vacated the magistrate's visitation scheme. Finally, the judgment implemented visitation in accordance with the Marion County companion schedule, allowed Caskey to make school placement decision and to continue providing health insurance, as well as ordered Pfeiffer to pay child support. Pfeiffer asserts that the trial court abused its discretion in not designating him as residential parent, in not maintaining the status quo, and in not continuing the existing companionship schedule. He further asserts that the trial court erred in not ordering Caskey to pay child support and in granting Caskey the tax exemption. Having found that the court did not abuse its discretion nor commit error, we affirm the judgment of the trial court.
 {¶ 2} Dustin Pfeiffer was born on November 30, 1998, to Pfeiffer and Caskey. In June 1998, the Marion County Juvenile Division approved Pfeiffer's purposed shared-parenting plan. The plan provided that Pfeiffer would take physical custody of Dustin from 9:00 a.m. on Sunday until 6:30 p.m. on Wednesday each week, and that Caskey would have physical custody from 6:30 p.m. on Wednesday until 9:00 a.m. on Sunday each week. The judgment also provided that Pfeiffer was to pay $84 per month in child support. Caskey refused to sign this judgment.
 {¶ 3} In June 2000, Caskey filed a motion for modification of the shared-parenting plan. Later that month, Pfeiffer also filed a motion for termination of the shared-parenting arrangement. In June 2002, Caskey filed a motion to dismiss her earlier motion to modify, along with a motion to terminate the shared-parenting plan.
 {¶ 4} A hearing was held before the magistrate, wherein several witnesses testified on behalf of both parties and various exhibits were admitted into evidence. Following the hearing, the magistrate issued a decision granting both Pfeiffer and Caskey's motions to terminate the shared-parenting plan. The magistrate named Caskey residential parent, and found that it was in Dustin's best interest, pursuant to R.C. 3109.04
that the visitation schedule under the shared-parenting plan be continued. Finally, the magistrate ordered that Dustin remain in the Ridgedale School district for the remainder of the 2002-2003 school year, but that the court should review the issue of future school placement in the summer of 2003.
 {¶ 5} Subsequently, both Pfeiffer and Caskey filed objections to the magistrate's decision. In her motion, Caskey asserted that the visitation schedule was not in Dustin's best interest. She also argued that it was error to not order Pfeiffer to pay child support, to not order a party to pay for Dustin's health insurance, and to not award Caskey the yearly tax exemption. Finally, she asserted that the magistrate erred in recommending the court review Dustin's future school placement. In his motion, Pfeiffer asserted that the magistrate erred in designating Caskey residential parent, by not ordering Caskey to pay child support, and by not awarding himself the yearly tax exemption.
 {¶ 6} Pursuant to the objections of both parties and upon reviewing the record and transcript of the November hearing, the trial court adopted the magistrate's decision designating Caskey as the residential parent and terminating the shared-parenting plan. However, the court then went on to vacate the magistrate's decision in all other respects, ordering:
1) Defendant shall have visitation with the child according tothe Marion County Companionship Schedule
 2) As the residential parent, the plaintiff shall make the placement ofthe child in school.
 3) Defendant shall pay child support to the plaintiff according to thechild support guidelines. Defendant's income shall be $28,000.00 peryear. Both parties shall submit the support calculations to the Court byJuly 1, 2003, and support shall commence July 1, 2003.
 4) Plaintiff shall continue to provide health insurance for the childthrough her employment.
 {¶ 7} It is from this judgment that Pfeiffer appeals, presenting five assignments of error for our review.
 Assignment of Error I The trial court abused its discretion in not designatingdefendant-appellant as residential parent of the minor child.
 {¶ 8} In his first assignment of error, Pfeiffer asserts that the court abused its discretion by ignoring relevant factors in designating Caskey residential parent.
 {¶ 9} Initially, we note that domestic relations courts have broad discretion in matters relating to the allocation of parental rights and responsibilities.[1] A trial court's decision regarding the allocation of parental rights and responsibilities will not be reversed on appeal absent an abuse of discretion.[2] We may not find an abuse of discretion unless the trial court's decision was unreasonable, arbitrary or unconscionable.[3] Upon review, appellate courts must accord "the utmost respect" to the trial court's discretion.[4] Thus, "the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct."[5]
 {¶ 10} R.C. 3109.04 governs a trial court's determination of custody. In an action to determine an allocation of parental rights and responsibilities the trial court must consider what is in the best interest of the child. In determining the best interest of the child, the trial court must consider all relevant factors, including, but not limited to, those factors listed in R.C. 3109.04(F)(1). These factors are as follows:
(a) The wishes of the child's parents regarding his care;
 (b) * * * the wishes and concerns of the child, as expressed to thecourt;
 (c) The child's interaction and interrelationship with his parents,siblings, and any other person who may significantly affect the child'sbest interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in thesituation;
 (f) The parent more likely to honor and facilitate visitation andcompanionship rights approved by the court;
 (g) Whether either parent has failed to make all child supportpayments, including all arrearages, that are required of that parentpursuant to a child support order under which that parent is an obligor;
 (h) Whether either parent previously has been convicted of or pleadedguilty to any criminal offense involving any act that resulted in a childbeing an abused child or a neglected child; * * *;
 (i) Whether the residential parent or one of the parents subject to ashared parenting decree has continuously and willfully denied the otherparent his or her right to visitation in accordance with an order of thecourt;
 (j) Whether either parent has established a residence, or is planningto establish a residence, outside this state.
 {¶ 11} Pfeiffer maintains that the court ignored relevant facts in making its determination. Specifically, Pfeiffer claims the court ignored the close relationship between himself and Dustin and that Dustin was a well adjusted child. According to Pfeiffer, "[t]he transcript of the hearing is full of examples of the strong relationship between the child and his father." Additionally, Pfeiffer argues the court abused its discretion by not following the guardian ad litem's recommendations. Finally, Pfeiffer argues the court's consideration of his failure to make child support payments was irrelevant, as that issue was being considered within a separate pending motion.
 {¶ 12} In the judgment, the court noted that upon review of the entire record and transcript it did "not believe the father is a proper person to be designated as the residential parent of this child." To support its conclusion, the court noted several specific examples. First, the court noted it "was appalled at the testimony of the defendant father," stating:
The father hid the truth from the mother when he was incarcerated forthe check incident. His testimony about his various jobs was so vague itappears he is trying to cover up his actual involvement in his work. Hereceived a $500,000.00 check. He could not remember who wrote the checkor what it was for.
Second, the Court noted that when Pfeiffer went to court for the check incident he parked in the fire lane, believing it was not going to take that long. Third, the court was troubled by what it referred to as Pfeiffer's "excuse[s] for what he should have done but didn't do." Specifically, the court pointed to the following incidents:
A) He didn't phone the child's mother because the phones are limited injail.
 B) Prior to depositing the check he found the phone of the companyissuing the check disconnected.
 C) He was charged with furnishing an alcoholic beverage to a minorchild, but it wasn't his fault.
 D) He needs an attorney to interpret Item 6 of the shared parentingplan which he signed.
 {¶ 13} At the November hearing both Pfeiffer and Caskey testified. Additionally, Jason Warner, the guardian ad litem, and both paternal grandparents testified. While Pfeiffer correctly notes that all the witnesses testified to the strength of the relationship between Pfeiffer and Dustin and that Dustin was performing well in school, there was also substantial evidence to support the trial court's finding that Pfeiffer was not the proper person to be designated the residential parent.
 {¶ 14} At the hearing, there was testimony presented regarding Pfeiffer's not telling Caskey that he was in jail. Pfeiffer was sentenced to thirty days in jail for passing a bad check. Upon being sent to jail, he never contacted Caskey to tell her where he was. For the first two weeks he was in jail, Dustin continued being dropped off at the babysitters daily, and Pfeiffer's parent would take care of Dustin when Pfeiffer was responsible for him. For the latter two weeks, Pfeiffer contacted Caskey from jail, but told her he was out of town. Caskey agreed to keep Dustin those two weeks, believing Pfeiffer was out of town on business. According to Pfeiffer, his lying was not an issue, because Dustin had been cared for.
 {¶ 15} There was also additional evidence of Pfeiffer's deceptive behavior and how it was affecting Dustin. For example, Pfeiffer had enrolled Dustin in school without Caskey's knowledge or permission. Pfeiffer had also signed Dustin up for an additional baseball team, which required Dustin to be pulled out of games so that he could play in other games. Further, not only did Pfeiffer not tell Caskey that he signed Dustin up for the additional team, but he also neglected to give her a team schedule. Finally, Caskey testified that Pfeiffer had taken Dustin out of the state without telling her or getting her permission.
 {¶ 16} Evidence was also presented that Pfeiffer was uncooperative and had failed to comply with the shared-parenting agreement. Caskey testified that she and Pfeiffer have not been able to make joint decisions and that they have not always consulted one another to be joint babysitters. There were also numerous conflicts because Pfeiffer had signed Dustin up for the additional baseball team. Caskey also testified that when she would try to approach Pfeiffer regarding these issues, he became defensive and turn would away from her.
 {¶ 17} According to Pfeiffer, the court ignored relevant factors in making its decision. Specifically, he points to the evidence that showed the Dustin's interaction and interrelationship with Pfeiffer, as well as Dustin's paternal grandparents. We disagree for two reasons. First, it is presumed that the trial court considered all relevant factors in making its decision.[6] Second, the record clearly supports that court's findings. As shown above, there was ample evidence to support the court's judgment. Accordingly, we cannot say the court abused its discretion.
 {¶ 18} Pfeiffer also argues the court failed to give adequate consideration to the guardian ad litem's recommendations. At both the November hearing and in his written recommendation, the guardian ad litem recommended that Dustin should continue spending equal time with both parents.
 {¶ 19} Although a juvenile court must consider the recommendation of the guardian ad litem, it is not required to follow that recommendation.[7] Accordingly, this Court has stated:
The function of a guardian ad litem or for a representative of thechild is to secure for such child a proper defense or an adequateprotection of its rights. The ultimate decision is any proceeding is forthe judge and not for the representative of the parties and the trialcourt did not, for that reason, err in making an order contrary to therecommendation of the child's representative.[8]
Without more, we cannot say that the trial court abused its discretion because it did not follow the recommendation of the guardian ad litem. As noted above, the trial court clearly gave its reasons for designating Caskey residential parent, and there was ample evidence to support that finding. Accordingly, we cannot find an abuse of discretion.
 {¶ 20} Finally, Pfeiffer argues the court's consideration of his failure to make child support payments was irrelevant, as that issue was being considered within a separate pending motion. Pursuant to R.C.3109.04(F)(1)(g), which allows the court to consider whether a party has made all support payments, it was entirely appropriate for the trial court to consider Pfeiffer's failure to make child support payments in making its determination of parental rights and responsibilities. Accordingly, the consideration of that issue in a separate pending motion is irrelevant, and the trial court could properly consider such evidence.
 {¶ 21} Because the trial court properly considered all relevant factors and its findings are clearly supported by the evidence, we cannot find that it abused its discretion in designating Caskey residential parent. Accordingly, we overrule appellant's first assignment of error.
 Assignment of Error II The trial court abused its discretion in not dismissing the motions forthe parties and maintaing the status quo.
 Assignment of Error IV The trial court abused its discretion by not retaining the existingcompainionship times for defendant-appellant.
 {¶ 22} In his second assignment of error, Pfeiffer contends that the court abused its discretion in not maintaining the status quo. In his fifth assignment of error, Pfeiffer similarly argues that the court erred in not maintaining the existing visitation schedule. Because these assignments of error are interrelated, we will consider them together.
 {¶ 23} Relying on his arguments from his first assignment of error, Pfeiffer maintains that pursuant to Patton v. Patton,[9] the trial court should have dismissed both motions and maintained the status quo, if that was in Dustin's best interest. In Patton this Court did find that when considering all relevant factors set forth in R.C. 3109.04(F)(1), the court did not abuse its discretion in finding it was in the child's best interest to maintain the current shared-parenting agreement, maintaining the status quo, even where both parents moved the court for a termination of such an agreement.[10] While Pfeiffer correctly states that the court has discretion to maintain the status quo, the court also retains discretion to change a shared-parenting agreement.
 {¶ 24} Again, when reviewing a trial court's determination to modify custody, its decision is subject to reversal only upon a showing that the trial court abused its discretion.[11]
 {¶ 25} In this case, we cannot find that the court abused its discretion in terminating the shared-parenting agreement. Relying on the above discussion, we find the court properly considered all relevant factors. Further, the court's findings, designating Caskey residential parent, were clearly supported by the record. Accordingly, Pfeiffer's second assignment of error is overruled.
 {¶ 26} In his fifth assignment of error, Pfeiffer similarly argues that the court abused its discretion by not retaining the existing shared-parenting schedule as Dustin's visitation schedule. Specifically, Pfeiffer argues that the court failed to consider the factors set forth in R.C. 3109.051(D) in determining the visitation schedule.
 {¶ 27} In order to guide the court's determination of the child's best interest, the legislature enumerated sixteen "best interest" factors at R.C. 3109.051(D). The first fourteen factors contemplate things such as the geographical distance between the parent and grandparents, the child's age, the child's adjustment to school, the child's wishes, the health and safety of the child, the amount of time available to spend with siblings, the willingness to cooperate with the other party involved, whether either of the parties has been convicted of a criminal offense against a child, and whether either party plans to establish residence outside of Ohio.[12] The fifteenth factor takes into account the relation of the party seeking visitation.[13] And, finally, the sixteenth factor considers "any other factor in the best interest of the child."[14]
 {¶ 28} As is the case in child custody and support matters, issues surrounding visitation are within the sound discretion of the trial court and will not be upset absent a showing of abuse of discretion.[15]
 {¶ 29} Again, Pfeiffer relies upon the reasons set forth in his first assignment of error. Thus, based on the above rational, we cannot say the trial court abused its discretion. Accordingly, we overrule Pfeiffer's fifth assignment of error.
 Assignment of Error III The trial court erred in not ordering plaintiff-appellee to pay childsupport.
 Assignment of Error IV The trial court erred in not granting defendant-appellant the taxexemption at least in alternative years.
 {¶ 30} In his third and fourth assignments of error, Pfeiffer argues that as residential parent he should be entitled to child support and the tax exemption. Because these two assignments of error are interrelated, we will consider them together.
 {¶ 31} Pfeiffer concedes that his third assignment of error is contingent upon his being designated Dustin's residential parent. Accordingly, because we overruled his first assignment of error, this assignment of error is rendered moot.
 {¶ 32} In his fourth assignment of error, Pfeiffer first argues that upon his being designated residential parent, he would be entitled to the income tax exemption pursuant to Singer v. Dickinson.[16]
Again, having found the court did not abuse its discretion in designating Caskey residential parent, Pfeiffer's argument in this regard is rendered moot.
 {¶ 33} Pfeiffer goes on, however, to argue that if this Court restores the companionship schedule, which existed prior to the court's decision, he would at least be entitled to the being awarded the exemption in the alternative years. According to Pfeiffer, a net tax saving would result because Caskey may qualify for the earned income credit based on her earnings. We disagree for two reasons. First, having found the court did not abuse its discretion in termination the previous visitation schedule, Pfeiffer's argument is essentially rendered moot. Further, even if this issue is not moot, we find Pfeiffer failed to produce sufficient evidence to support his claim.
 {¶ 34} At the outset, we note that the allocation of tax exemption is a matter within the sound discretion of the trial court and, therefore, will not be overruled absent an abuse of discretion.[17]
 {¶ 35} Under the federal tax code, the custodial parent is presumptively entitled to claim the child as a dependent.[18]
Nevertheless, this presumption may be overcome and the tax exemption may be allocation to the nonresidential parent when such an allocation "would produce a net tax savings for the parent, thereby furthering the best interests of the child."[19] Such a savings only occurs if the noncustodial parent's taxable income falls into a higher tax bracket than the custodial parent's taxable income.[20] "If both parent's incomes are taxed in the same tax bracket, no net savings are realized by allocating the dependency exemption to the non-custodial parent."[21]
 {¶ 36} Here the evidence indicates that Caskey's taxable income for 2001 was thirty-one thousand, seven hundred and fifteen dollars ($31,715) and Pfeiffer's taxable income for 2001 was twenty-three thousand, four hundred and twenty-one dollars ($23,421). Further, Caskey testified that she was still employed at Verizon at her current rate of pay and that she and her husband's combined gross income totaled approximately seventy to eighty thousand dollars per year. Pfeiffer testified that his current income totaled almost twelve thousand dollars, and that he was not seeking other employment. Based on the evidence provided, Pfeiffer is clearly not going to be in a higher tax bracket. Accordingly, underSinger there can be no net tax savings.
 {¶ 37} Further, Pfeiffer's claim that Caskey may qualify for the earned income credit, resulting in a net tax savings, fails because Pfeiffer never raised the issue with the trial court and it is speculative.
 {¶ 38} Although the trial court is required to consider all the pertinent evidence in determining which parent should receive the exemption, the court obviously cannot consider evidence which has not been presented. Errors which are not brought to the attention of the trial court are waived and need not be addressed for the first time on appeal.[22] Additionally, an appellant cannot change the theory of his case and present new arguments for the first time on appeal.[23]
 {¶ 39} In his objection to the magistrate's decision, Pfeiffer only requested that he be granted the exemption in the alternate years, with no further argument. Additionally, he provided no additional evidence at trial to show Caskey would qualify for the earned income credit. Thus, not only is Pfeiffer raising this theory for the first time on appeal, but his argument is also highly speculative. Accordingly, Pfeiffer's fourth assignment of error is overruled.
 {¶ 40} Because we cannot say the court abuse its discretion in designating Caskey residential parent, we, further, cannot find the court erred in not ordering Caskey to pay child support and in ordering she take the tax exemption every year. Accordingly, the third and fourth assignments of error are overruled.
 {¶ 41} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
Bryant, P.J., and Cupp, J., concur.
[1] Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
[2] Davis v. Flickinger (1997), 77 Ohio St.3d 415, paragraph one of the syllabus.
[3] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[4] Miller, 37 Ohio St.3d at 74.
[5] Id., citing Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80.
[6] Mollica v. Mollica, 9th Dist. No. 02CA0079-M, 2003-Ohio-3921, at ¶ 11.
[7] In re Haywood (May 9, 2000), 3rd Dist. No. 1-99-93, 1-99-34, and 1-99-95.
[8] Id., citing In re Height (1975) 47 Ohio App.2d 203, 206.
[9] (2001), 141 Ohio App.3d 691.
[10] Id. at 228-229.
[11] Masters v. Masters (1994), 69 Ohio St.3d 83, 85.
[12] See R.C. 3109.051(D)(1-14).
[13] R.C. 3109.051(D)(15).
[14] R.C. 3109.051(D)(16).
[15] In re Whaley (1993), 86 Ohio App.3d 304, 317.
[16] (1992), 63 Ohio St.3d 408.
[17] Eickelberger v. Eickelberger (1994), 93 Ohio App.3d 221,226.
[18] Boose v. Lodge, 3rd Dist. No. 6-03-04, 2003-Ohio-4257 at ¶ 5.
[19] Id., citing Singer, 63 Ohio St.3d at paragraph two of the syllabus.
[20] Singer, 63 Ohio St.3d at 415.
[21] Id. at 416.
[22] Atkinson v. Grumman Ohio Corp. (1988), 37 Ohio St.3d 80, 82.
[23] State ex rel. Guttierez v. Trumbull Cty. Bd. of Elections (1992),65 Ohio St.3d 175, 177.