OPINION
{¶ 1} Defendant-appellant Gary Perkins appeals from the November 3, 2003, Order of the Stark County Court of Common Pleas, Domestic Relations Division overruling defendant-appellant's objection to the Magistrate's Decision.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Gary Perkins and appellee Deborah Perkins nka Stillman entered into a common-law marriage in September of 1986. Two children were born as issue of such marriage, namely, Jacklyn Perkins (DOB 7/30/92) and Eric Perkins (DOB 4/8/94).
 {¶ 3} On November 13, 1996, appellee filed a complaint for divorce against appellant. Subsequently, on July 7, 1997, the parties entered into a Separation Agreement. Pursuant to the terms of the Separation Agreement, appellant agreed to pay child support to appellee in the amount of $200.00 per month per child, plus poundage, and to "pay as support all necessary medical expenses for each child." The trial court's July 8, 1997, Judgment Entry granting the parties a divorce incorporated the Separation Agreement.
 {¶ 4} Thereafter, on September 11, 2002, appellant filed a motion to modify child support, arguing that there had been a "substantial change in circumstances" since the prior order. Appellant, in his motion, specifically argued that he was currently disabled and receiving Social Security Disability (SSI) and, therefore, had no income.
 {¶ 5} An evidentiary hearing before a Magistrate commenced on February 26, 2003. The following evidence was adduced at the hearing.
 {¶ 6} During the defense case, appellant Gary Perkins testified that he was not employed as of the time of the hearing and that he received SSI in the amount of approximately $490.00 per month. Appellant testified that he had been receiving SSI for about ten years and that the Social Security Administration had him "marked down as permanently disabled for life." Transcript at 6. According to appellant, he has degenerative disc disease, hardening of the liver due to hepatitis, numbness in his hand and leg on the right side of his body, and scarred brain tissue due to a blow to the head seven or eight years ago. Appellant's liver problems cause him to become tired during the day. Appellant did not submit any medical records at the hearing.
 {¶ 7} At the hearing, appellant further testified that he was disabled and receiving SSI at the time the parties entered into the agreed child support order and that his parents helped him make the child support payments of $200.00 per month per child. Appellant further testified that he had not worked in 2000, 2001 or 2003 and that, in 2002, he had worked at Creative Irish Gifts for $8.50 an hour for about a month and a half. In 1999, appellant worked 40 hours a week as a manager for Office Duty, Inc. as well as for his father. Appellant testified that he was able to work at such time because he was taking certain medications that enabled him to function, but that he was no longer allowed to take the medications because they cause liver damage. When asked whether, besides his SSI, he had any other source of income, appellant responded that he had "no income whatsoever." Transcript at 17.
 {¶ 8} On cross-examination, appellant testified that he was working at the time of the divorce but he presented no evidence as to the type of employment or his earnings. Appellant also testified that he worked three or four days in 2002 as a salesman for Broadview Financial and was paid $300.00, which he disclosed to the Social Security Administration. On redirect, appellant testified that, when he works, his SSI monthly payment is reduced by the extent of any earnings. Appellant further testified on redirect that, at the time he agreed to pay $200.00 per month per child in child support, he believed that he was going to be able to obtain full time employment since he was feeling pretty good, but that his condition has worsened since such time due to his inability to take medications.
 {¶ 9} At the conclusion of appellant's testimony, appellee orally moved to dismiss appellant's request for a change in child support due, in part, to the fact that no child support worksheet had been filed as required by the Local Rules. In response, appellant's counsel stated in relevant part, as follows:
 {¶ 10} ". . . I could file a child support worksheet, but all it's going to show is that neither party has any income and that there's no child support, so I mean, that's why we didn't file one, because it's my understanding if Miss Stillman isn't employed either . . ." Transcript. At 24.
 {¶ 11} The Magistrate overruled the motion, stating, in relevant part, as follows: "If Social Security income, SSI . . . is not income, gross income by Statute, and if the parties have no income, I find that there's no need for a guideline worksheet." Transcript at 27.
 {¶ 12} During appellee's case, appellant admitted that a document filed by appellant in this case in August of 2000 showed that appellant's gross income was $18,600.00. Appellant testified that such document "portrayed what I could make when I was with OIS." Transcript at 29. O.I.S., Inc. is a company owned by appellant's father that distributes equipment used in ophthalmology. At times, appellant has worked for such company delivering and setting up ophthalmic instruments. However, appellant testified that he had not worked for his father's company recently. In 2002, appellant earned a total of $840.00 from O.I.S.
 {¶ 13} At the hearing, Dr. John Quinn of Career Point testified on behalf of appellee. Dr. Quinn, a vocational expert, evaluated appellant on February 7, 2003. Dr. Quinn testified that appellant could earn between $18,125.00 and $20,706.00 in the area of sales. However, Dr. Quinn did not review any of appellant's medical records and was unaware that the Social Security Administration had determined that appellant was disabled.
 {¶ 14} Subsequently, the Magistrate, in a September 8, 2003, decision, recommended that appellant's motion for a modification of child support be overruled, finding that appellant was not entitled to relief under R.C. 3119.79. The Magistrate, in his decision, stated, in relevant part, as follows:
 {¶ 15} "Although neither party submitted a guideline worksheet there is no dispute based on both parties absence of income that a greater than 10% deviation exists. It is the Defendant's contention that the 10% deviation should result in a modification of the child support order to zero.
 {¶ 16} "The Court of Appeals for Summit County had occasion to consider the application of R.C. 3119.79 to a support order which was based upon the obligor's agreement to pay an upward deviation. In Smith v. Collins (1995), 107 Ohio App.3d 100 the Ninth District Court of Appeals held at page 105: when a party voluntarily agrees to a child support obligation which exceeds the statutory support schedule by more than ten percent, that party must show a substantial change in circumstances beyond the statutory ten percent deviation before the trial court may modify the support obligation.
 {¶ 17} "The Court in Smith v. Collins, supra found that the 10% deviation was a circumstance which was contemplated at the time of the issuance of the original child support order. In the instant case, likewise the ten percent deviation was contemplated when the parties agreed to the $200.00 per month per child support order."
 {¶ 18} Appellant then filed an objection to the Magistrate's decision. Pursuant to an Order filed on November 3, 2003, the trial court overruled appellant's objection.
 {¶ 19} It is from the trial court's November 3, 2003, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 20} "I. The trial court erred in applying the dual threshold test found in Anderkin v. Lansdell (1992), 80 ohio app.3d 687 and Smith v. Collins (1995), 107 Ohio App.3d 100
when determining whether there had be [SIC] a change in circumstances warranting a modification of appellant's child support obligation.
 {¶ 21} "II. The trial court erred in denying appellant's motion to modify child support as a result of finding that there had not been a change in circumstances since the prior child support order.
 {¶ 22} "III. The trial court erred in failing to complete and include a child support worksheet in the record."
 {¶ 23} For purposes of judicial economy, we shall address appellant's assignments of error out of sequence.
 III {¶ 24} Appellant, in his third assignment of error, argues that the trial court erred in failing to complete and include in the record a child support worksheet.
 {¶ 25} "A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215 [now R.C. 3119.022], must actually be completed and made a part of the trial court's record." Marker v. Grimm (1992),65 Ohio St.3d 139,601 N.E.2d 496, at paragraph one of the syllabus. Failure to complete and include the worksheet in the record constitutes reversible error. McClain v. McClain (1993),87 Ohio App.3d 856, 858, 623 N.E.2d 242.
 {¶ 26} We first note that Marker addresses prior R.C.3113.215, which the General Assembly repealed on March 22, 2001. However, the modern version of the support guideline statute, R.C. 3119.022, continues to mandate that a court or agency calculating child support "shall use a worksheet." Therefore, we find the rule of Marker, supra. applicable to R.C. 3119.022. See Cutlip v. Cutlip, Richland App. No. 02CA32, 2002-Ohio-5872.
 {¶ 27} We are cognizant that at least one appellate court has approached this issue by analyzing whether a court's failure to follow the statute per Marker has affected the parties' substantial rights, noting that "[a]ny remand to the * * * court with instructions to memorialize in a worksheet that which the court has already considered would be an exercise in futility."Carr v. Blake (Feb. 18, 2000), Hamilton App. No. C-990174, at 4, 2000 WL 192138.[1] Nonetheless, the Supreme Court expressed concern in Marker that due to the lack of inclusion of the worksheet in the record, they were "left to speculate" as to how the trial court determined that the child support figure ordered was the appropriate amount. Marker at 142.
 {¶ 28} In the case sub judice, the Magistrate, in his decision, specifically indicated that neither party had any income and that, for such reason, there was no need for a child support guideline worksheet. For such reason, we find that the court's failure to file a child support worksheet has not affected the parties' substantial rights or hindered appellate review of this matter. As noted by the court in Carr, supra. at 4, a remand to the trial court would be "an exercise in futility."[2]
 {¶ 29} Appellant's third assignment of error is, therefore, overruled.
 I, II {¶ 30} Appellant, in his first and second assignment of error, argues that the trial court erred in overruling appellant's motion for modification of child support. Appellant specifically contends that the trial court erred in applying the "dual threshold test" and in finding that there had been no change in circumstances. We agree.
 {¶ 31} The Magistrate, in his September 8, 2003, decision, cited Smith v. Collins (1995), 107 Ohio App.3d 100,667 N.E.2d 1236, for the proposition that, in order to prevail on his motion for modification of child support, appellant was required to show a 10% change from the existing child support order and that there was a substantial change of circumstances beyond the statutory 10% deviation.
 {¶ 32} This "dual threshold" test was established by the Twelfth District Court of Appeals in Anderkin v. Lansdell
(1992), 80 Ohio App.3d 687, 610 N.E.2d 570. In Anderkin, the court held as follows in the syllabus:
 {¶ 33} "2. Where the existing child support arrangement is not a "child support order" within the meaning of the statute but instead is an agreement under which the custodial parent assumes sole responsibility for the support of the children and the noncustodial parent is not required to make child support payments, the test for determining whether the child support can be modified is the following dual threshold test:
 {¶ 34} "(A) If the supporting custodial parent's circumstances have changed to the extent that that parent can no longer provide the total amount reasonable for the support of the children, then the trial court can modify the existing child support arrangement. Bahgat v. Bahgat (1982),8 Ohio App.3d 291, 293].
 {¶ 35} "(B) If the noncustodial parent's circumstances have changed substantially and the trial court in its discretion finds it is in the best interest of the children to receive support from that parent, then the trial court can modify the existing child support arrangement, even though the supporting parent is still able to provide the total amount reasonable for the support of the children." (Emphasis added).
 {¶ 36} However, the Ohio Supreme Court, in DePalmo v.DePalmo, 78 Ohio St.3d 535, 1997-Ohio-184, 679 N.E.2d 266, rejected the "dual threshold" test set forth in Anderkin. InDePalmo, the Ohio Supreme Court held that in a case such as this where a support order already exists, the only test for determining whether child support shall be modified is that set forth in R.C. 3113.215(B)(4) [now 3119.79].
 {¶ 37} R.C. 3119.79 states, in relevant part, as follows; "(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount." If there is a sufficient change in circumstances, the court shall require support in the amount set by the guidelines unless that amount would be unjust or inappropriate and not in the best interest of the child. Id.
 {¶ 38} Clearly, based on the Magistrate's finding that appellant has no income, the amount of child support that appellant would be required to pay, once recalculated, is more than 10% less than the amount ($400.00 per month) appellant currently pays under the existing child support order. Since, therefore, there was a sufficient change in circumstances, modification of the amount of child support paid by appellant was clearly required "in the amount set by the guidelines unless that amount would be unjust or inappropriate and not in the best interest of the children."
 {¶ 39} Based on the foregoing, we find that the trial court erred in overruling appellant's motion for modification of child support.
 {¶ 40} Appellant's first and second assignments of error are sustained.
 {¶ 41} Accordingly, the judgment of the Stark County Court of Common Pleas, Domestic Relations Division is reversed and this matter is remanded to the trial court for further proceedings.
Edwards, J. Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas, Family Court Division, is reversed and this matter is remanded for further proceedings. Costs assessed to appellee.
[1] In Carr, the court noted that there was an extensive record available for review that was "replete with `information concerning many of the items necessary to complete a worksheet.'"Carr, supra. at 4.
[2] In contrast, in Cutlip v. Cutlip, Richland App. No. 02CA32, 2002-Ohio-5872, this Court declined to follow Carr,
supra. In Cutlip, we noted that while the trial court found a deviation in the amount of child support warranted based on a conclusion that the appellee's mental condition rendered her unemployable for the near future, the court made no mention in its entry of appellee's testimony that she was employed at Office Max for $5.15 per hour, ten to fifteen hours per week, or of the appellant's annual income of approximately $33,000.00 per year plus overtime. This Court, in holding that proper appellate review was therefore hindered, stated as follows: "[w]hile the court's language provides reasoning in support of deviation, it nonetheless creates speculation as to the results, however, minimal they might turn out, of applying the raw numbers to any deviation."