DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Laurie Bonos, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which granted Appellee, Barry Ankney's motion for modification of the allocation of parental rights. This Court affirms in part, reverses in part, and remands.
 I. {¶ 2} The parties in this case are the parents of Hope Bonos born on May 30, 1997. Hope's parents, Laurie Bonos ("Mother") and Barry Ankney ("Father"), never married. Father initiated litigation in this matter by filing a paternity complaint in juvenile court six months after Hope's birth. Since that time, Mother and Father have engaged in frequent litigation in both Juvenile and Domestic Relations Courts[1] regarding visitation rights and arrangements. Eventually in August 2000, Father and Mother agreed upon a Shared Parenting Plan with Mother being named as the residential parent and legal custodian. The parties agreed to a subsequent modification of the Shared Parenting Plan in September 2002, retaining Mother as the residential parent and legal custodian.
 {¶ 3} In February 2004, there was once again a breakdown in the utilization of the Shared Parenting Plan, which prompted Father to file a motion for parent coordination services. Mother responded by filing a motion for referral to Family Court Services and the appointment of a guardian ad litem ("G.A.L.") for Hope. Father, in turn, amended his motion to also request the trial court to 1) modify the allocation of parental rights and responsibilities; 2) designate him as sole residential parent; 3) establish a companionship schedule for Mother; 4) designate a new school district for Hope; 5) establish primary health insurance coverage; 6) terminate Father's child support order; and 7) establish child support from Mother. The Magistrate held two hearings on the pending motions and reviewed both of the proposed Shared Parenting Plans submitted by Father and Mother.
 {¶ 4} The Magistrate's Decision named Father as the residential parent for school purposes beginning in the 2005-2006 school year. Additionally, the Magistrate conditionally adopted Father's proposed Shared Parenting Plan with some suggested modifications. Father's proposed Shared Parenting Plan appointed Father and Mother as joint residential parents and joint legal custodians. Additionally, the proposed Shared Parenting Plan provided equal parenting time beginning June 1, 2005. Up until June 1, 2005, Father's proposed Shared Parenting Plan gradually increased Father's parenting time with the following alternating week schedule: one week Hope would be with Father from Thursday after school until Friday morning before school, and the next week Hope would stay with Father from Thursday after school until Monday morning before school. Additionally, the Magistrate designated Father's health insurance as primary and ordered him to pay the first $100 per year out of pocket medical expenses. Lastly, the Magistrate terminated Father's child support obligation to Mother due to the equal parenting time beginning on June 1, 2005.
 {¶ 5} Mother filed an objection and a supplemental objection to the Magistrate's Decision and Father filed response briefs to each objection. Based upon the briefs, documents in the file, and transcript of the proceedings, the trial court overruled Mother's objections and adopted and modified the Magistrate's Decision. In addition to the modifications suggested by the Magistrate's Decision, the trial court also suggested modifying the proposed Shared Parenting Plan to stagger the parenting time for summer and winter breaks. The trial court ordered Father to make revisions to the proposed shared parenting plan. Upon receipt of the revisions, the trial court adopted Father's Plan for Shared Parenting.
 {¶ 6} Mother timely appeals the March 14, 2006 Post Decree Journal Entry and the March 28, 2006 Judgment Entry, asserting five assignments of error. For ease of review, we will combine some of the assignments of error.
 II. A. First Assignment of Error
"THE TRIAL COURT ERRED IN NAMING FATHER RESIDENTIAL PARENT FOR SCHOOL PURPOSES BUT [SIC] FAILING TO INCORPORATE THE GUARDIAN AD LITEM'S AND FAMILY COURT SERVICES EVALUATOR'S RECOMMENDATIONS REGARDING MODIFICATION OF THE PARTIES' SHARED PARENTING PLAN."
 Second Assignment of Error
"THE TRIAL COURT ERRED IN ADOPTING FATHER'S ALTERNATING WEEK SCHEDULE, WITHOUT CONSIDERATION OF THREE-DAY SCHOOL HOLIDAYS."
 {¶ 7} In her first and second assignments of error, Mother alleges the trial court erred by not fully considering the guardian ad litem's and family court services evaluator's recommendations regarding the modification of the Shared Parenting Plan. Based on these recommendations, Mother argues it was error for the trial court to name Father as the residential parent for school purposes which will result in changing schools for Hope. Additionally, Mother contends that the recommendations do not support equal parenting time. Mother argues the equal parenting time schedule conflicts with three-day school holidays and does not benefit Hope. Essentially, Mother is arguing that the trial court's decisions regarding the modification of the Shared Parenting Plan were not in the best interests of Hope. We disagree.
 {¶ 8} This Court reviews a trial court's decision regarding the modification of a shared parenting plan for an abuse of discretion. Hunter v. Bachman, 9th Dist. No. 04CA008421,2004-Ohio-5172, at ¶ 15. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 9} R.C. 3109.04(E)(2)(b) permits the trial court to
"modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree."
This court has held that modifications of the residential parent for school purposes, modification of the terms of parenting time, and modification of child support are not reallocation of parental rights, but merely changes in the terms of the shared parenting plan. Hunter at ¶ 11. Thus, the trial court only needs to find that such changes are in the best interests of the children. R.C. 3109.04(E)(2)(b).
 {¶ 10} In order to make a determination of what is in the best interests of the children, the trial court must look to the non-exclusive factors outlined in R.C. 3109.04(F)(1):
"(a) The wishes of the child's parents regarding the child's care;
"(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
"(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
"(d) The child's adjustment to the child's home, school, and community;
"(e) The mental and physical health of all persons involved in the situation;
"(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
"(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;
"(h) Whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent previously has been convicted of or pleaded guilty to a violation of [R.C. 2919.25] involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."
1. Residential Parent for School Purposes and ParentingSchedule
 {¶ 11} The thrust of Mother's first and second assignments of error is that the trial court erred in modifying the Shared Parenting Plan to make Father the residential parent for school purposes and for adopting equal parenting time without regard to three-day school holidays. Mother asserts these modifications were not in Hope's best interests.
 {¶ 12} A substantial amount of testimony was presented regarding the past, present, and future of Hope's education. Both Father and Mother testified as to their desires to be the residential parent for school purposes. While both Father and Mother are active volunteers at Hope's school, the G.A.L. and Family Court Evaluator both felt Mother's involvement at school was excessive, to the point of distracting Hope, and that it would benefit Hope if there was less parental involvement at school. Accordingly, both the G.A.L. and Family Court Evaluator recommended enrolling Hope in a new school in order to give everyone a fresh start.
 {¶ 13} Father testified that he believed Hope would be able to adjust to a new school without any difficulty. Father has a strong belief that Hope deserves the best educational opportunities that are available and is willing to put forth the time and resources necessary to provide Hope with the education and tutoring available. Father has investigated and compared the performance, curriculum, services, and safety of both public and private schools. He is looking for the school that best fits Hope's educational needs. Based upon Hope's declining standardized test scores, Father does not feel that Hope's current school, Hatton Elementary, is adequately and timely addressing her academic needs. Realizing that switching schools midway through the year would be traumatic and disruptive, Father proposed the change in schools to take place at the beginning of the next school year. For the remainder of the school year, Father insisted on tutoring and working with Hope on her studies.
 {¶ 14} Based on the Family Court Evaluator's investigation, Mother feels Hope is an average student who is struggling with her school work and that Hope would not be able to succeed academically if she changed schools. Mother testified that Hope is receiving tutoring and extra help from the teachers at Hatton Elementary. Mother spoke very highly of the curriculum and extracurricular activities available to Hope at Hatton Elementary. Mother testified that classroom size and teacher qualifications at Hatton Elementary are comparable to the other schools Father is considering. Further, Mother asserted that changing schools would not be in Hope's best interests as she likes her current school and she has many friends in the neighborhood that attend her school. Mother specifically feels a parochial school is against Hope's best interest as it will not comport with her Presbyterian upbringing. Mother also questioned the level of volunteering required of the parents at the parochial schools.
 {¶ 15} Additionally, Mother countered the G.A.L. and Family Court Evaluator's position that she was too involved at Hope's school, by presenting testimony from the principal of Hatton Elementary. The principal stated she did not feel Mother's time volunteering at the school was excessive, nor had she received any complaints regarding Mother's presence at school.
 {¶ 16} Further, Mother argues that the principal is better qualified than the G.A.L. and Family Court Evaluator to interpret the meaning of Hope's declining standardized test scores. The principal testified that Hope is a "strong average student" even though she had not reviewed Hope's standardized test scores. The principal admitted that there are 500 kids in the school, therefore she does not "key in on particular students" in regards to their grades. Instead, she relied upon the teachers' and Mother's comments that Hope is doing well.
 {¶ 17} While both Father and Mother clearly want what is best for Hope, they each have distinct ideas as to what is best. As to parenting time, Mother testified that "it's hard to — to say what's going to be best for — for Hope as far as, you know, who gets her on certain days." Nonetheless, Mother concedes that Father should have additional time with Hope. However, she does not agree that the proposed weekly rotation of parenting time is in Hope's best interest because it denies Hope of three-day school holidays. Also, by being away for a week at a time, Hope will lose contact with her friends in the neighborhood and not be able to participate in dance and swim lessons. Mother is uncertain as to how Hope would handle a weekly rotation.
 {¶ 18} However, Father testified that a weekly rotation should be an easy adjustment for Hope because in the summer she stays with each parent for two weeks at a time. It is Father's position that the weekly rotation during the school year would provide a more stable schedule for Hope and would relieve some of her uncertainty as to which parent she would be with that day or night. Additionally, the G.A.L. and Family Court Evaluator recommended, not only additional time for Father, but also the weekly rotation. The Family Court Evaluator testified that while Father and Mother got along well for the most part, occasionally there would be tension between them. If Hope rotates between her parents once a week on a school day, it limits Hope's exposure to such tension.
 {¶ 19} Both the G.A.L. and Family Court Evaluator opine that the weekly rotation would be beneficial as it would permit Hope to be with her Father for a longer stretch of time and hopefully to be able to pinpoint and address any concerns over her academic progress. Father testified that the weekly visitation schedule supports Hope's educational needs. The limited once a week and weekend visits made it difficult for Hope to complete all her homework.
 {¶ 20} Father stated the dead-on equal time schedule was meant to eliminate the problems they experienced in the past as to visitation on snow days and school holidays. Under Father's proposed plan, whichever parent was scheduled during an unexpected snow day or a long weekend would stay with Hope. Father testified that it was not his intention to deny Mother of snow days or three-day school holidays. Father asserted both parties would miss out on three-day school holidays. Father's brief acknowledges that there is no "perfect" plan that will make everyone happy. Instead, his proposed plan focused on what was best for Hope, and not what was best for the parents.
 {¶ 21} Based upon a review of the record, we do not find that the trial court abused its discretion in designating Father as the residential parent for school purposes or for adopting the equal parenting time. The trial court applied the factors set forth in R.C. 3109.04(F) to the testimony and evidence presented at the hearings and found the changes were in Hope's best interests. Accordingly, we cannot find an abuse of discretion.
2. Miscellaneous Arguments
 {¶ 22} Mother's overriding argument is that the trial court's Order sustaining the Magistrate's modifications to the Shared Parenting Plan was not in Hope's best interest. While the captions of Mother's first and second assignments of error only state that she is contesting Father's appointment as residential parent for school purposes and the adoption of Father's parenting schedule, Mother also includes a variety of sub-issues which we will now address.
 {¶ 23} Mother first claims that "[n]umerous recommendations by the Guardian ad litem were incorporated, but apparently only where they benefit[ed] Father." Specifically, Mother argues that the trial court erred when it "disregarded" the G.A.L.'s recommendations for a smoke-free environment at Father's home[2] and the parents' attendance at Working Together and Remember the Children. The recommendations of a G.A.L. are for the trial court's consideration in determining the best interests of the child. Kauble v. Pfeiffer, 3d Dist. No. 9-03-36,2003-Ohio-6988, at ¶ 19. However, a trial court is not obligated to follow the G.A.L.'s recommendations. Id. "The ultimate decision [in] any proceeding is for the judge[,] and not for the representative of the parties * * *." Id. Accordingly, there is no error because the trial court made an order contrary to the recommendations of the G.A.L. Id. Therefore, the trial court's failure to adopt the G.A.L.'s recommendations for a smoke-free environment and parenting classes is not an abuse of discretion.
 {¶ 24} Next, Mother states that "Father has consistently made it impossible for Hope's Maternal Grandmother to provide transportation for her." Mother refers this Court to the testimony of the G.A.L. to support this allegation. However, the transcript does not support Mother's allegation. On cross-examination, Mother's counsel questioned the G.A.L. regarding the transportation issue:
"Q: And there's also been some history of problems concerning Hope in transportation to [sic] at this time?
"A: Yes.
"Q: That's part of the schedule?
"A.: That's my understanding."
From this exchange, there is nothing to indicate what exactly the problem was with the transportation, just that there was a problem.
 {¶ 25} Further, Mother does not provide any explanation as to how transportation relates to the modification of the Shared Parenting Plan. An appellant bears the burden of affirmatively demonstrating the error on appeal and substantiating his or her arguments in support. App.R. 16(A)(7); Loc.R. 7(A)(7). SeeFigley v. Corp, 9th Dist. No. 04CA0054, 2005-Ohio-2566, at ¶ 8. Moreover, it is not the duty of this Court to develop an argument in support of an assignment of error, even if one exists. Statev. Tanner, 9th Dist. No. 04CA0062-M, 2005-Ohio-998, at ¶ 24;Prince v. Jordan, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 40; Klausman v. Klausman, 9th Dist. No. 21718,2004-Ohio-3410, at ¶ 29.
 {¶ 26} Additionally, Mother has failed to put forth an argument with regards to her bare statements that the trial court failed "to maintain the current order as to Hope's Custodial account" and that the trial court failed "to recognize that [Mother] spoke highly of Step-Mother's involvement with Hope * * * but that Step-Mother's attitude merely `wasn't incredibly derogatory towards Mom.[']" Mother's brief does not provide any explanation or case law to establish how these sub-issues are relevant in making a determination of what is in the best interests of Hope when modifying the Shared Parenting Plan. App.R. 16(A)(7); Loc.R. 7(A)(7). See Figley at ¶ 8.
 {¶ 27} Lastly, Mother's allegation regarding the Magistrate's Decision's consideration of the prior litigation is not properly before this Court. "Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." Mealey v. Mealey (May 8, 1996), 9th Dist. No. 95CA0093, at *2.
 {¶ 28} Mother's first and second assignments of error are overruled.
 B. Third Assignment of Error
"THE TRIAL COURT ERRED IN ORDERING A CHANGE IN HOPE'S CUSTODIAL ACCOUNT WHERE THERE WAS NO EVIDENCE TO SUPPORT SUCH A CHANGE."
 {¶ 29} In her third assignment of error, Mother alleges the Magistrate's Decision erred in placing Father's name, in addition to Mother's name, on Hope's custodial bank account. Mother argues that it is not possible to have two names on the account, there was no evidence to support the addition of Father's name to the account, the account is custodial and not a trust account, and the purpose of the account is not for education.
 {¶ 30} A party may only appeal from the trial court's decision to either sustain or overrule an objection to the magistrate's decision. Mealey, at *2. "Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." Id. Mother's third assignment of error specifically assigns error to the Magistrate's Decision for allowing Father's name to be placed on the custodial account. Nowhere in her third assignment of error does Mother allege any error by the trial court.
 {¶ 31} Accordingly, Mother's third assignment of error lacks merit and is overruled.
 C. Fourth Assignment of Error
"THE TRIAL COURT ERRED IN MODIFYING CHILD SUPPORT OBLIGATIONS AND REALLOCATING DEPENDENT TAX EXEMPTION WHERE THE PARTIES' [SIC] STIPULATED THAT FINANCIAL ISSUES WERE NOT AT ISSUE."
 {¶ 32} Mother's fourth assignment of error alleges that the parties stipulated that financial issues were not at issue, thus it was error to terminate Father's child support obligations and to reallocate the dependent tax exemption. We disagree.
 {¶ 33} Pursuant to R.C. 3119.24(A)(1),
"[a] court that issues a shared parenting order in accordance with [R.C.] 3109.04 * * * shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in [R.C.] 3119.022 * * *." (Emphasis added.)
The trial court is obligated to follow the mandatory procedures outlined in R.C. 3119.24(A)(1), "regardless of whether the parties have reached an agreement on their own regarding child support." Warner v. Warner, 3d Dist. No. 14-03-10, 2003-Ohio-5132, at ¶ 13. While the law favors settlements, the law recognizes that compromises made in settlement negotiations regarding child support may not always be in the best interests of the child. Id.
 {¶ 34} The record in this matter reflects that the parties stipulated to "[n]ot having any modification on the child support * * *." However, the parties' stipulation does not control the issue of child support as the trial court granted the modification of the Shared Parenting Plan. Contrary to Mother's argument, the trial court was required to review the existing child support order and enter a new order accordingly.
 {¶ 35} Pursuant to R.C. 3119.82, when a trial court reviews and modifies a child support order, it is required to designate which parent may claim the child as a dependant for tax purposes. In this case, the trial court reviewed the prior child support order and terminated it. Accordingly, the issue of which parent to allocate the dependency exemption was properly before the trial court.
 {¶ 36} Mother's fourth assignment of error is overruled.
 D. Fifth Assignment of Error
"THE TRIAL COURT ERRED IN TERMINATING CHILD SUPPORT AND REALLOCATING [THE] DEPENDENT TAX EXEMPTION WHERE THE PARTIES' INCOME TAX INFORMATION IS NOT IN THE RECORD AND THE TRIAL COURT DID NOT PREPARE A CHILD SUPPORT WORKSHEET."
 {¶ 37} Mother's fifth assignment of error alleges the trial court erred in terminating Father's child support obligations and reallocating the dependent tax exemption. Mother argues that no income tax information was submitted into evidence and the trial court failed to prepare the required child support worksheet. We agree.
1. Dependent Tax Exemption
 {¶ 38} The allocation of tax exemptions between parents will not be disturbed absent an abuse of discretion. Starr v. Starr
(June 7, 1995), 9th Dist. No. 16817, at *7. Federal law entitles the custodial parent to the dependency tax exemption. Esber v.Esber (1989), 63 Ohio App.3d 394, 399, overruled on other grounds by Inscoe v. Inscoe (1997), 121 Ohio App.3d 396, 425. However, the Ohio Supreme Court has allowed the dependency exemption to be awarded to the non-custodial parent if it were to serve the best interest of the child. Bobo v. Jewell (1988),38 Ohio St.3d 330, 332. Further, when the parents have never married, the court may also award the dependency exemption to either parent based on the best interests of the child. Esber,63 Ohio App.3d at 399.
 {¶ 39} In determining the best interests of the child with regards to the dependency tax exemption, the court must decide which parent will benefit the most by examining which parent would receive a net tax savings as result of the dependency exemption. Esber, 63 Ohio App.3d at 399; Singer v. Dickinson
(1992), 63 Ohio St.3d 408, 415. The allocation of the dependency exemption creates a net tax savings to the parent whose taxable income falls in the higher tax bracket. Singer,63 Ohio St.3d at 415.
"In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." Id. at 416.
 {¶ 40} In addition to the above factors, the Ohio legislature has codified the following factors to consider in allocating the dependency exemption:
"the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." R.C. 3119.82.
While the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision. Streza v. Streza, 9th Dist. No. 05CA008644, 2006-Ohio-1315, at ¶ 12-13; Banning v. Banning
(June 28, 1996), 2d Dist. No. 95 CA 79, at *14.
 {¶ 41} In the instant case, there was testimony that Father is semi-retired, self-employed and Mother is unemployed. While Father did not testify as to his yearly salary, he stated that he had been successful in his career and he had the means to pay for private schooling and tutoring for Hope. Mother's testimony revealed that she was currently unemployed and caring for her ailing mother ("Grandmother"). In return, Grandmother transferred the deed to her home to Mother. Mother testified that due to the instability of employment in her line of work, she had saved approximately $30,000 to $50,000 a year during the last five years of her employment in the banking industry. Mother has supported herself and Hope with these savings for the past three years.
 {¶ 42} This was the extent of the financial questioning during the hearings. While there was some discussion regarding the financial circumstances of the parents and the trial court ordered equal parenting time, the record is clearly void of any specific tangible financial information or tax records.[3]
Based upon the lack of financial information and tax records, we find that the trial court abused its discretion in allocating the dependency exemption on a rotating basis between Father and Mother.
2. Child Support
 {¶ 43} Decisions regarding child support obligations are within the discretion of the trial court and will not be disturbed unless there was an abuse of discretion. Pauly v.Pauly (1997), 80 Ohio St.3d 386, 390. As discussed above, R.C.3119.24(A)(1) mandates a trial court to issue a child support order when there is a modification to a shared parenting plan. The trial court calculates the amount of child support "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections [R.C.] 3119.02 to [R.C.] 3119.24 * * *." R.C. 3119.02. R.C. 3119.022 provides the content and form for the child support computation worksheet applicable to shared parenting plans.
"A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215 [now R.C.3119.022],[4] must actually be completed and made a part of the trial court's record." Marker, 65 Ohio St.3d at paragraph one of the syllabus.
Its provisions are "mandatory in nature and must be followed literally and technically in all material respects" because the overriding concern is the best interest of the child for whom the support is being awarded. Id. at paragraph two of the syllabus. It is the trial court's responsibility to ensure that a worksheet is completed and included as part of the record. Id. at 142. Failure to complete the worksheet and to include it in the record constitutes reversible error. Wegner v. Heischman (Sept. 27, 1995), 9th Dist. No. 17076, at *1.
 {¶ 44} A review of record does not reveal a completed worksheet as required by statute. Nor is there any indication in the record that the trial court considered the statutory requirements listed on the worksheet in terminating child support. Equal parenting time is an insufficient basis, without a worksheet and evidence of deviation, to terminate child support. See Glassner v. Glassner, 160 Ohio App.3d 648, 2005-Ohio-1936, at ¶ 48. Accordingly, the trial court abused its discretion in terminating Father's child support obligation.
 {¶ 45} Mother's fifth assignment of error is sustained. The decision of the trial court allocating the tax dependency exemption to the parties in alternating years and terminating Father's child support obligation is reversed and the matter is remanded for further proceedings.
 III. {¶ 46} Mother's assignments of error one through four are overruled. Mother's fifth assignment of error is sustained. The judgment of Summit County Court of Common Pleas, Domestic Relations Division granting Father's motion for reallocation of parental rights and adoption of his Shared Parenting Plan is affirmed in part, reversed in part, and the cause remanded for further proceedings consistent with this decision.
Judgment affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to both parties equally.
Whitmore, P.J. Moore, J. concur.
[1] The underlying case was originally filed in the Juvenile Division in November 1997. As the parents in this case were unmarried, the case was transferred to the Domestic Relations Division in June 2000.
[2] We note that Father testified that he does not smoke in his home due to his step-son's asthma. Based on this unrefuted testimony, Father's home is a smoke-free environment.
[3] These factors are applicable not only in custodial versus non-custodial parent situations, but also when both parents share custodial and/or residential parent status, as in this case.Banning, at *15.
[4] "[T]he modern version of the support guideline statute, R.C. 3119.022, continues to mandate that a court or agency calculating support `shall use a worksheet.' Therefore, we find the rule of Marker v. Grimm (1992), 65 Ohio St.3d 139, applicable to R.C. 3119.022." Perkins v. Perkins, 5th Dist. No. 2003CA00405, 2004-Ohio-6758, at ¶ 26.