DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Domestic Relations Division, after remand from this court to redetermine issues involving the calculation of child support. Because we conclude that the trial court properly imputed and calculated the parents' incomes and child support, we affirm.
 {¶ 2} This is the second time this case has come before us on appeal. Appellant, James Syslo, and appellee, Cheryl Syslo, were granted a divorce in 2001. In 2002, we reviewed
 {¶ 3} the divorce proceedings and final judgment regarding several issues. We remanded the case to the trial court "for a redetermination of child support consistent with this decision." See Syslo v. Syslo, 6th Dist. No. L-01-1273, 2002-Ohio-5205.
 {¶ 4} On remand, the trial court conducted a hearing regarding the parties' incomes. Appellee testified and provided information or tax returns as to her income for 1996 through 1999. Appellant's counsel submitted appellant's November 2003 deposition testimony, since appellant did not appear for the hearing. Appellant also presented expert testimony related to his current employment opportunities. James Flynn, a job recruiter, testified generally that jobs within the nuclear power industry had declined drastically after 1993. Flynn acknowledged that he had never met or spoken with appellant, but had only reviewed his resume and job history. Despite the decline in nuclear jobs, however, Flynn further stated that the trend and "availability of all the mechanical procedure contract" jobs in the United States between 1994 and 1998 was "very active in the engineering field." Flynn could not provide an opinion as to whether appellant's background and experience prevented him from finding employment outside the nuclear industry field.
 {¶ 5} After considering the additional rehearing evidence, the court found appellant to be voluntarily underemployed and imputed income to him of $104,000. The court specifically found that appellant's then current employment, since July 2001, was as a procedure writer for the Florida Turnpike FTM Department. Prior to that, appellant had worked in a similar capacity, but with lay-offs between completed contracts. As
 {¶ 6} stated on his resume, appellant had over 35 years experience in mechanical maintenance procedure writing and inspection. Before the divorce was filed, appellant worked in the nuclear power industry. The court concluded that appellant lived near a nuclear power facility in Florida, but "simply refused to seek those jobs that would have provided him the income he earned in 1993." The court also noted that appellant became employed at U.S. Borax "shortly after the [divorce] trial and maintained continuous employment for the next five years following trial." The court noted appellant's income on the following tax returns from 1993 to 1998: 1993 — $117,694.18; 1994 — $69,288.39;1995 — $76,429.57; 1996 — $72,477.73; 1997 — $72,709.46; and 1998 — $48, 876.00.
 {¶ 7} The court found that appellant's pay rate had been $47 per hour while working at U.S Borax, and at the time of the rehearing, 2005, appellant earned $50 per hour for 40 hours a week maximum. Based on the evidence presented and his current rate of pay, the court then recalculated appellant's yearly income to be $104,000 per year.
 {¶ 8} The court did not find appellee, then employed as a department store clerk, to be voluntarily unemployed because she had only a high school diploma and, by agreement of the parties, had been a homemaker during the marriage. To determine appellee's income, the court relied on appellee's actual yearly income for a four year period, including income from the sale of inherited investments. The court found that she currently earns $8 per hour, working 37 hours per week, for a yearly income of $14,800. Adding the amounts from the sale of her investments to the wages shown on her tax returns, the court found appellee's income to be as follows: $24,339.70 for 1996; $10,000 for 1997; $31,340 for 1998; and $20,094 for 1999.
 {¶ 9} The court then calculated child support for four separate years from 1996 to 1999, using appellant's income of $104,000 per year and appellee's actual yearly income totals, as follows: 1996 — $904.15 per month plus poundage; 1997 — $939.89 per month plus poundage; 1998 — $889.81 per month plus poundage; and 1999 — $913.92 per month plus poundage. The court further stated that "All child support shall continue until such time as the child becomes emancipated or until further order of the court * * * the duty to pay child support shall not continue beyond the child reaches nineteen (19) years of age * * *."
 {¶ 10} Appellant now appeals from that judgment, arguing the following three[1] assignments of error:
 {¶ 11} "Assignment of Error Number One
 {¶ 12} "The court erred in awarding the amount of child support requested to be recalculated on remand on the basis of improper factors and findings as to imputed income and other bases.
 {¶ 13} "Assignment of Error Number Two
 {¶ 14} "The court erred in rejecting the testimony of Mr. Flynn, defendant's expert.
 {¶ 15} "Assignment of Error Number Three
 {¶ 16} "The court did not rule upon defendant's objection as to the question of underemployment directed to plaintiff."
 I. {¶ 17} We will address appellant's first and second assignment of errors together. In his first assignment of error, appellant argues that the trial court erred in its calculations regarding his imputed income. In his second assignment of error, appellant contends that that trial court discounted the testimony of his expert regarding employment opportunities.
 {¶ 18} At the time the parties filed for divorce, former R.C.3113.215[2] provided guidelines for determination of income regarding a voluntarily unemployed or underemployed parent. SeeWilliams v. Williams (1992), 80 Ohio App.3d 477, 482
(applicable statute is the one in effect at filing of complaint, unless new statute is to be retroactively applied). Before a trial court may impute income to a parent, it must first find that the parent is voluntarily unemployed or underemployed.Inscoe v. Inscoe (1997), 121 Ohio App.3d 396, 424, citing toRock v. Cabral (1993), 67 Ohio St.3d 108, syllabus; Marek v.Marek, 158 Ohio App.3d 750, 2004-Ohio-5556, ¶ 14. Whether a parent is voluntarily unemployed or underemployed is a determination within the trial court's discretion and will be upheld absent an abuse of discretion. Rock, supra, at 112, applying former R.C. 3113.215. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 19} When imputing income, the trial court determines potential income, i.e., what the parent would have earned if fully employed. Former R.C. 3113.215(A)(5)(a). The trial court must consider the parent's "employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides." Id. The amount of potential income to be imputed to a parent is also a determination within the trial court's discretion. Rock,
supra.
 {¶ 20} Whether to calculate gross income by averaging income over a reasonable period of years is also within the discretion of the trial court and will not be reversed absent an abuse of that discretion. Former R.C. 3113.215(B)(5)(h). See also, Scott G.F. v. Nancy W.S., 6th Dist. No. H-04-015, 2005-Ohio-2750;McGuire v. McGuire (Mar. 8, 2002), 4th Dist. No. 01CA2789, 2002-Ohio-1061; Ferrero v. Ferrero (Jun. 8, 1999), 5th Dist. No. 98-CA-00095; Luke v. Luke (Feb. 20, 1998), 11th Dist. No. 97-L-044. When applying the abuse of discretion standard, appellate courts must not substitute their judgment for that of the trial court. In re Jane Doe I (1991), 57 Ohio St.3d 135,137-138.
 {¶ 21} In this case, appellant contends that the trial court did not consider his expert's testimony regarding the scarcity of job opportunities in the nuclear field and erred in imputing income instead of averaging his yearly income from 1996 to 1999. Our review of the record indicates that, although the expert did, in fact, say that employment positions in the nuclear industry had declined, other mechanical procedure writing opportunities remained "very active in the engineering field." We agree that no evidence was presented that a job opportunity existed in the nuclear industry in Florida. Therefore, the trial court's admonishment that appellant had failed to avail himself of employment at the nuclear power plant located within two hours of his Florida residence was unsupported by the record.
 {¶ 22} Nevertheless, the trial court's overall conclusion was that appellant was qualified for and had worked in other procedure writing fields, but had not been as diligent in pursuing those opportunities. We cannot say that this conclusion was contrary to the expert's opinion or unsupported by the record. Appellant's deposition testimony revealed that he has a Bachelor of Science college degree with a background in mechanical engineering and nuclear power from his submarine experience in the U.S. Navy.
 {¶ 23} Appellant had worked for over 35 years in a variety of procedure writing jobs, many unrelated to the nuclear industry. Although he said that after 1993, he was unable to secure work in the nuclear industry, he continued to work as a mechanical procedure writer each year for a variety of employers.
 {¶ 24} Appellant also explained that, in addition to obtaining jobs through special employment agencies, he had operated his own S-corporation consulting business for a number of years, for those companies who preferred to deal with a corporate entity. Appellant stated that because of a decline in the nuclear industry jobs, his income had dropped from nearly $118,000 in 1993, to just under $49,000 in 1998. He said that at the time of the divorce hearing in 1997, he had applied for "thousands of jobs," but had been unable to obtain work. Appellant acknowledged, however, that at the time of his deposition in late 2003, he was again employed and his then rate of pay was $50 per hour with a 40 hour per week maximum.
 {¶ 25} Appellant said he moved to Florida to live with his brother, but then acknowledged that his employment was not, in fact, limited by his geographic location. Rather, appellant corroborated appellee's testimony that, during the marriage he had applied for and chosen jobs which required travel all over the United States and even Europe. Appellee stated that appellant sometimes worked near their various residences, but more often traveled far from home. During the last two and one-half years of the marriage, she stated that appellant was home only one and one-half days every other week.
 {¶ 26} Thus, we conclude that, although appellant attempted to show that he simply was unable to make the same income he had been earning prior to the filing of the divorce, the trial court was not convinced. Therefore, in light of appellant's employment experience and all the testimony presented, we cannot say that the trial court's finding that appellant was underemployed was unsupported by the record or an abuse of discretion.
 {¶ 27} Regarding the specific method of calculation of appellant's current earnings, the court found no need to average any income. Appellant testified that he was then earning $50 per hour with a 40 hour work week, even though he was no longer working in the nuclear power industry. Applying simple math calculations, it is clear how the court arrived at appellant's imputed income: $50 × 40 hours × 52 weeks equals $104,000. Based on his then current employment, the court simply calculated a year's income based upon his current pay rate. Nothing in the record demonstrates that appellant's employment and income, which was not within the nuclear industry field, would not continue. Contrary to appellant's suggestion, the trial court is not required to average yearly incomes since it determined that appellant was underemployed. Therefore, we cannot say that the trial court abused its discretion in imputing income of $104,000 to appellant.
 {¶ 28} Accordingly, appellant's first and second assignments of error are not well-taken.
 II. {¶ 29} In his third assignment of error, appellant claims that the trial court failed to rule on an objection to appellee's statement regarding why appellant was unemployed in 1996, because the statement was an opinion "without foundation of personal knowledge" as allegedly required by Evid.R. 701.
 {¶ 30} Generally, if the trial court fails to rule on a motion or an objection, an appellate court will presume that the objection or motion was overruled. Dayton Monetary Assoc. v.Becker (1998), 126 Ohio App.3d 527, 539; Shaffer v. Shaffer
(1996), 109 Ohio App.3d 205, 212. The admission or exclusion of relevant evidence is within the sound discretion of the trial court and rulings on such matters will not be reversed absent an abuse of discretion. Krischbaum v. Dillon (1991),58 Ohio St.3d 58. Evid.R. 701 provides that a lay witness may give testimony in the form of opinions or inferences "which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."
 {¶ 31} In this case, the court failed to rule on appellant's objection to appellee's statement, "I think he was [on] voluntary leave of absence." Therefore, we will presume, for purposes of review, that the court overruled the objection. In our view, appellee's statement is exactly what is admissible under Evid.R. 701 — her opinion and perception that her husband had been on a voluntary leave of absence from employment. Appellant had the opportunity to cross-examine her to dispute the basis for her opinion. Consequently, we cannot say that the admission of her statement was improper.
 {¶ 32} Moreover, the court also reviewed and considered the appellant's deposition testimony in which he stated that he worked for a company called Fluor Daniel, which provided assignments at various procedure writing jobs around the country from 1994 to
 {¶ 33} He was "laid off" in 1997 from Fluor Daniel when he was "offered the opportunity to turn in my resignation pending being fired." Appellant stated that there had been cutbacks in the company and a new policy that contract employees would now be required to pay for many living and travel expenses previously reimbursed by the company. He said he voluntarily resigned because he could not afford to pay for temporary residences while on a job site, which led to a "lack of attendance of the job."
 {¶ 34} Therefore, even presuming that appellee's statement was admitted in error, which we are not, such alleged error was harmless, since appellant's own statements demonstrated that he had, in essence, taken a "voluntary leave of absence."
 {¶ 35} Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 36} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J. Singer, P.J. Parish, J. Concur.
[1] Appellant originally submitted a fourth assignment of error which related to a post-divorce matter which had been consolidated with this appeal, case number L-06-1122. Appellant voluntarily withdrew the fourth assignment of error related to that issue, leaving only the three assignments addressed herein.
[2] R.C. 3113.215 was repealed in March 2001 and was replaced by R.C. 3119.05 which now provides the following additional guidelines for determining imputed income:
"(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:
"(i) The parent's prior employment experience;
"(ii) The parent's education;
"(iii) The parent's physical and mental disabilities, if any;
"(iv) The availability of employment in the geographic area in which the parent resides;
"(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
"(vi) The parent's special skills and training;
"(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
"(viii) The age and special needs of the child for whom child support is being calculated under this section;
"(ix) The parent's increased earning capacity because of experience;
"(x) Any other relevant factor."