DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Jerry A. Dunlap and Alisa R. Dunlap separated after 4 ½ years of marriage. A magistrate found they had stipulated regarding visitation and deviated from the child support guidelines based on Mr. Dunlap's extended parenting time. He awarded Mr. Dunlap the tax dependency exemptions, even though Mrs. Dunlap is the residential parent. He also awarded Mrs. Dunlap only 18 months of spousal support despite stating that he would award her 19 months. Mrs. Dunlap filed objections, and the trial court concluded that the child support deviation was not appropriate. It increased the amount of child support, but reduced her spousal support. The trial court agreed with the magistrate that Mr. Dunlap could claim the children as tax dependents and that 18 months of spousal support was appropriate. This Court affirms the trial court's decision as modified below. *Page 2 
 FACTS {¶ 2} The Dunlaps married on September 8, 2001, and have three unemancipated children. Mr. Dunlap's income is $86,048 per year. He pays child support for two children he had with other women before the marriage. Mrs. Dunlap is a self-employed attorney who works from home, but was not working at the time of the separation because, according to her, she could not find good child care. In 2005, she made $21,595, and in 2004, she made $13,701. She has a gallbladder condition, but is taking medication for it.
 {¶ 3} The Dunlaps stipulated to a shared parenting plan and agreed that Mrs. Dunlap would be the residential parent. They agreed that Mr. Dunlap would visit the children during the morning before he had to go to work. This would allow Mrs. Dunlap to resume working during those hours. The Dunlaps also stipulated that they would alternate parenting time on the weekends.
 {¶ 4} The magistrate found that Mrs. Dunlap had to seek employment and imputed $21,595 in income to her for purposes of calculating child and spousal support. He found that the parties had stipulated that Mr. Dunlap would have parenting time with the children from 8:00 a.m. to 1:00 p.m. every weekday at Mrs. Dunlap's home. Because this was "approximately 28% of extended parenting time with the children," he found that the statutory amount of child support was unjust and, therefore, deviated from it in the amount of $5478 annually. He concluded that Mr. Dunlap should pay $834.23 per month for child support. He also concluded that, because the marriage was 4 years and 7 months, it was appropriate and reasonable for Mr. Dunlap to pay $1000 per month for 18 months for spousal support. He further concluded that Mr. Dunlap could claim the children as tax dependents as long as he was current with his support payments. *Page 3 
 {¶ 5} Mrs. Dunlap filed several objections. She argued that the magistrate incorrectly deviated from the child support guidelines, incorrectly ordered her to seek employment, incorrectly found her income to be $21,595, incorrectly ordered that Mr. Dunlap would have parenting time from 8:00 a.m. to 1:00 p.m. every weekday at her home, incorrectly found that Mr. Dunlap would have 28% extended parenting time with the children, incorrectly determined the amount of child support, incorrectly allowed Mr. Dunlap to claim the children as tax dependents, failed to consider child care expenses in the child support worksheet, incorrectly determined the duration of spousal support, and incorrectly found her to be in good health.
 {¶ 6} The trial court determined that the magistrate had correctly imputed $21,595 in income to Mrs. Dunlap. She had not given a valid reason for why she was not working and had not submitted any evidence regarding her reasonable and necessary business expenses. The trial court also determined that, since the parties had stipulated that Mr. Dunlap would visit the children from 8:00 a.m. to 1:00 p.m. every weekday and alternating weekends, the magistrate had correctly calculated his parenting time. The trial court concluded, however, that, because Mr. Dunlap would be visiting the children at Mrs. Dunlap's home, deviation from the child support guidelines was not appropriate. Regarding the tax dependency exemptions, the trial court concluded that, "[i]nasmuch as [Mrs. Dunlap] was not working, the greater tax benefit would be to [Mr. Dunlap]." The trial court also concluded that, even though Mrs. Dunlap has a gall bladder condition, it does not prevent her from working or taking care of the children. The court, therefore, concluded that 18 months of spousal support was appropriate.
 {¶ 7} In its "Findings of Fact" and "Conclusions of Law," the court wrote that Mr. Dunlap shall pay $1324.50 per month in child support and $400 per month in spousal support. In its "Order," however, the court wrote that Mr. Dunlap shall pay $834.23 per month in child *Page 4 
support and $1000 per month in spousal support, the same amounts the magistrate had ordered. Mrs. Dunlap has appealed, assigning eight errors.
 EXTENDED PARENTING TIME {¶ 8} Mrs. Dunlap's first assignment of error is that the trial court incorrectly determined that Mr. Dunlap would have 28% extended parenting time. She has argued that she did not stipulate that Mr. Dunlap could have parenting time with the children from 8:00 a.m. to 1:00 p.m. each weekday. In fact, she testified that the children do not wake up until 10:00 a.m. and that Mr. Dunlap has to change and get ready for work by 1:00 p.m. Realistically, this only leaves about 2 ½ hours that Mr. Dunlap can spend with the children each day. She also testified that, every other time they have had a break in their relationship, Mr. Dunlap has moved out of the county. Accordingly, whether he will actually visit the children on weekday mornings is questionable.
 {¶ 9} Mrs. Dunlap stipulated that Mr. Dunlap would have visitation with the children on alternating weekends and from 8:00 a.m. to 1:00 p.m. on weekdays. At the hearing, she explained that the only time Mr. Dunlap had to visit on weekdays was during the morning before he went to work. Mr. Dunlap suggested that, since the children would be waking up at Mrs. Dunlap's home, he should visit them there while she worked. The magistrate agreed and suggested that "then we can maybe stipulate on visitation . . . you guys are going to have a shared parenting plan where you're going to alternate weekends. And that you're going to not only alternate the weekend, but then during the week from 8:00 to 12:00, [Mr. Dunlap] will have visitation at [Mrs. Dunlap's] address while you work. . . . [I]s that correct?" Mr. Dunlap replied "Eight to 1:00" and the magistrate responded "Eight to 1:00 o'clock. All right. Is that in *Page 5 
agreement then?" Mrs. Dunlap replied "[y]es." The magistrate then stated "[o]kay. Well, that's what we can stipulate to as far as the visitation." Mrs. Dunlap did not object.
 {¶ 10} Under the stipulation, Mr. Dunlap has the children for five hours a day, five days a week and twenty-six weekends a year. Ignoring the effect of holidays and days of special meaning, Mr. Dunlap has visitation rights for 2548 hours out of the 8760 hours in a 365-day year, or approximately 29% of the total possible hours. The trial court, therefore, did not err when it concluded that Mr. Dunlap would spend "approximately 28% of extended parenting time with the children." Mrs. Dunlap's first assignment of error is overruled.
 TAX DEPENDENCY EXEMPTIONS {¶ 11} Mrs. Dunlap's second assignment of error is that the magistrate incorrectly ordered that Mr. Dunlap "shall take the children as dependents for federal/state tax purposes. . . ." Section 3119.82 of the Ohio Revised Code provides that "[w]henever a court issues . . . a court child support order, it shall designate which parent may claim the children . . . as dependents for federal income tax purposes . . ." "The allocation of tax exemptions between parents will not be disturbed absent an abuse of discretion." Ankney v. Bonos, 9th Dist. No. 23178,2006-Ohio-6009, at ¶ 38.
 {¶ 12} If the parties do not agree on which parent should claim the children, the court may permit the non-residential parent to claim them if it determines "that this furthers the best interest of the children." R.C. 3119.82 "[T]he court shall consider . . . any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." Id. Net tax savings "occur through allocation to the noncustodial *Page 6 
parent only if the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent."Singer v. Dickinson, 63 Ohio St. 3d 408, 415-16 (1992). "While the trial court does not need to state a basis for allocating the exemption, the record does need to include financial data in relation to the above factors to support the trial court's decision." Ankney, 2006-Ohio-6009, at ¶ 40.
 {¶ 13} The magistrate did not explain why he allowed Mr. Dunlap to claim the children as dependents. The trial court, however, overruled Mrs. Dunlap's objection regarding this issue because she was not working. Mrs. Dunlap has argued that she was only temporarily out of work and that she had earned $300 between January and April 2007. She has also argued that she was ordered to start working, and, therefore, will have income that qualifies for federal tax credits. She has further argued that Mr. Dunlap did not request the tax dependency exemptions and noted that other courts have held that "[i]n the absence of evidence showing that the nonresidential parent would receive a net tax savings from the dependency exemption, the court must employ the presumption that the dependency exemption belongs to the residential parent."Hurte v. Hurte, 164 Ohio App. 3d 446, 2005-Ohio-5967, at ¶ 33
(concluding that information about the parties' disparate incomes alone was insufficient to grant the exemption to a non-residential parent).
 {¶ 14} Hurte is distinguishable because both parties in that case were working. Although the trial court ordered Mrs. Dunlap to resume working and imputed income to her for purposes of determining child and spousal support, she did not submit any evidence that she was currently working. The trial court, therefore, could not accurately determine the tax benefits she would receive if she retained the exemptions. It knew, however, that Mr. Dunlap had an income of over $86,000 and could calculate his tax savings if he were awarded the exemptions. *Page 7 
 {¶ 15} This case resembles Yasinow v. Yasinow, 8th Dist. No. 86467,2006-Ohio-1355, at ¶ 35, in which a magistrate also awarded tax dependency exemptions to a nonresidential parent. The nonresidential parent in that case earned $99,000, while the residential parent had imputed earnings of $20,000, but actual earnings of only $5300.Id. at ¶ 50. The Eighth District upheld the decision, concluding that "[t]he relative incomes of the parties necessarily dictates that [the nonresidential parent] could make the best use of the exemptions, which would be of little or no economic value to [the residential parent] based upon her tax bracket." Id. at ¶ 51. Similarly, considering the disparity in earnings between Mr. and Mrs. Dunlap, the trial court did not abuse its discretion when it determined that allowing Mr. Dunlap to claim the children as tax dependents was in their best interest. Mrs. Dunlap's second assignment of error is overruled.
 AMOUNT OF SUPPORT {¶ 16} Mrs. Dunlap's third assignment of error is that the trial court incorrectly reduced the combined total of child and spousal support that Mr. Dunlap has to pay. This Court reviews the trial court's determination of child and spousal support for an abuse of discretion.Hyder v. Hyder, 9th Dist. No. 06CA0014, 2006-Ohio-5285, at ¶ 21. Although the trial court sustained Mrs. Dunlap's objection regarding the magistrate's child support deviation and increased the amount of child support Mr. Dunlap has to pay, it reduced her spousal support without explanation. Combining the two amounts, Mrs. Dunlap receives $110 a month less under the trial court's order than under the magistrate's. Mrs. Dunlap has argued that the trial court should have provided an explanation for why its combined award is smaller. She has also argued that the trial court should have remanded the case to have the magistrate recalculate the spousal support award. *Page 8 
 {¶ 17} Regarding the reduction in Mrs. Dunlap's total support award, both the magistrate and trial court attached a financial worksheet to their decisions, showing the tax consequences of spousal support for each party and the parties' "after tax cash for living expenses." Comparing the worksheets, the trial court's distribution of child and spousal support saves Mrs. Dunlap over $2000 per year in taxes. That savings more than offsets the reduction in support awarded her. The trial court's financial worksheet also shows a relatively equal "cash for living expenses" distribution between the parties. Accordingly, while Mrs. Dunlap's combined support award may be $110 less per month under the trial court's order, this Court concludes that it did not abuse its discretion.
 {¶ 18} Regarding whether the trial court should have remanded the spousal support calculation to the magistrate, Civil Rule 53(D)(4)(b) provides that "[w]hether or not objections are timely filed, [the trial] court may adopt or reject a magistrate's decision in whole or in part, with or without modification." Accordingly, the trial court had authority to modify Mrs. Dunlap's spousal support award without remanding that issue to the magistrate. Mrs. Dunlap's third assignment of error is overruled.
 UNDEREMPLOYED/IMPUTED INCOME {¶ 19} Mrs. Dunlap's fourth and fifth assignments of error are related and will be considered together. Her fourth assignment of error is that the magistrate incorrectly found that her gross income was $21,595 for purposes of child support. Her fifth assignment of error is that the trial court incorrectly found that she was "under-employed."
 {¶ 20} Mrs. Dunlap has argued that she did not stipulate that her income was $21,595 in 2005 and $13,701 in 2004. She has also argued that the magistrate should have recognized that she is self-employed and deducted reasonable and necessary business expenses from her gross *Page 9 
income. She has further argued that, in light of her medical condition, her child care problems, her being the residential parent, and the unpredictability of her practice, the magistrate should have averaged her income for 2004 and 2005 to determine her imputed income.
 {¶ 21} Although Mrs. Dunlap has asserted that she presented a 1040 form for 2004, the record only contains her 1099-Misc forms for 2004 and 2005, which are attached to the magistrate's decision. Those forms indicate that she had "nonemployee compensation" of $21,595 in 2005 and $13,701 in 2004. She did not present any other evidence regarding her income or reasonable and necessary business expenses for those years. The trial court, therefore, did not err when it concluded that the 1099-Misc forms accurately reflected Mrs. Dunlap's income.
 {¶ 22} Regarding whether she is underemployed, Mrs. Dunlap testified that she has a home office, but was not accepting cases because she could not get child care. She later testified that Mr. Dunlap had cared for the children during the mornings and that she would hire an in-home baby sitter if she was ordered to work. Regarding her medical condition, she testified that her health was "so-so" and that she "[has] a gallbladder condition that [she takes] regular medication for." She did not testify that her medical condition affects her ability to work. She also did not testify or present any other evidence regarding the unpredictability of her practice. The trial court, therefore, did not abuse its discretion when it concluded that she was underemployed. SeeRock v. Cabral, 67 Ohio St. 3d 108, syllabus (1993) (holding that the determination of whether a parent is voluntarily underemployed will not be disturbed on appeal absent an abuse of discretion).
 {¶ 23} Regarding the amount of imputed income, Section3119.01(C)(5)(b) of the Ohio Revised Code provides that the income of "a parent who is unemployed or underemployed" *Page 10 
includes "the sum of the gross income of the parent and any potential income of the parent." "Potential income" includes imputed income that the parent would have earned if she had been fully employed. R.C.3119.01(C)(11)(a). The criteria for determining imputed income includes the parent's prior employment experience, her education, her physical and mental disabilities, the availability of employment, the prevailing wage and salary levels, her special skills and training, whether there is evidence that she has the ability to earn the imputed income, the age and special needs of the children, her increased earning capacity because of experience, and any other relevant factor. R.C.3119.01(C)(11)(a)(i-x).
 {¶ 24} Although Section 3119.01(C)(11) requires a court to consider a parent's past employment and wages, it does not require the court to average her past income. Syslo v. Syslo, 6th Dist. Nos. L-06-1016, L-06-1122, 2006-Ohio-6053, at ¶ 27 (concluding trial court did not have to average mother's yearly incomes because she was underemployed). The trial court noted that $21,595 "was [Mrs. Dunlap's] prior year's income," and concluded that the magistrate had correctly imputed that amount to her because "[t]here is no reason why she could not continue to earn that income if she took new cases and worked." This Court agrees that Mrs. Dunlap has failed to establish that there is any medical or other reason why she could not earn $21,595 per year if she resumed working. Her fourth and fifth assignments of error are overruled.
 DURATION OF SPOUSAL SUPPORT {¶ 25} Mrs. Dunlap's sixth assignment of error is that the trial court should have ordered a longer duration of spousal support or, at least, continued jurisdiction over that issue. She has argued that the magistrate's award was factually incorrect because he stated at the hearing that she would be entitled to receive spousal support for 19 months, but only granted her 18 months. She has also argued that, because her self-employment income is meager compared to Mr. *Page 11 
Dunlap's, because the parties' three children are all minors, and because her gall bladder condition could get worse over time, the trial court should have either lengthened the duration of her spousal support or continued jurisdiction over that issue.
 {¶ 26} The magistrate and trial court's decisions stated that "[s]pousal support shall not remain under the jurisdiction of this Court." Section 3105.18(D) provides, however, that "[i]n an action brought solely for an order for legal separation . . . any continuing order for periodic payments of money . . . is subject to further order of the court upon changed circumstances of either party." The Dunlaps were granted a legal separation, not a divorce or dissolution. The trial court, therefore, retains jurisdiction to modify Mrs. Dunlap's spousal support. Its judgment is so modified. See App. R. 12(A)(1)(a).
 {¶ 27} Regarding the duration of the award, Section 3105.18(B) provides that the court "may award reasonable spousal support to either party." Section 3105.18(C)(1) provides that the court "shall consider" a number of specific factors in determining the amount and duration of support. The trial court wrote that "after consideration of the spousal support factors in O.R.C. 3105.18(C)(1) the Court finds that spousal support is appropriate and reasonable for a period of 18 months." As noted above, the trial court retains jurisdiction to modify Mrs. Dunlap's spousal support if her medical condition worsens. Considering that Mr. Dunlap agreed to visit and take care of the children from 8:00 a.m. to 1:00 p.m. each weekday, Mrs. Dunlap has not established that 18 months of spousal support is unreasonable. Furthermore, although the magistrate initially stated that Mrs. Dunlap would receive 19 months of spousal support, she has not established that the trial court abused its discretion when it concluded that an award of only 18 months was reasonable. Her sixth assignment of error is overruled. *Page 12 
 CHILD CARE EXPENSES {¶ 28} Mrs. Dunlap's seventh assignment of error is that the trial court incorrectly ordered her to work without making a finding for child care expenses. She has argued that, even if Mr. Dunlap watches the children from 8:00 a.m. to 1:00 p.m., she must still find childcare for the rest of the day. The court, however, failed to apportion responsibility for that expense or consider it in determining child and spousal support and in awarding the tax dependency exemptions.
 {¶ 29} The trial court overruled Mrs. Dunlap's objection regarding child care costs because there was no evidence in the record regarding that expense. This Court agrees that, because there was no evidence in the record on which to determine the amount of her childcare costs, the trial court did not abuse its discretion when it awarded child support, spousal support, and the tax dependency exemptions without taking that expense into consideration. See State, ex rel., Springer v. Booth, 6th Dist. No. E-92-42, 1993 WL 463709 at *5 (Nov. 12, 1993) (concluding that, because mother did not present any evidence of child care expenses, trial court did not have to consider those expenses in determining the amount of income to impute to her). Mrs. Dunlap's seventh assignment of error is overruled.
 INCONSISTENT JUDGMENT {¶ 30} Mrs. Dunlap's eighth assignment of error is that the trial court incorrectly stated two different amounts of spousal and child support in its decision. In its "Findings of Fact" and "Conclusions of Law," the trial court wrote that Mr. Dunlap shall pay child support in the amount of $1324.50 per month and spousal support in the amount of $400 per month. In its "Order," however, it wrote that he shall pay child support in the amount of $834.23 per month and spousal support in the amount of $1000 per month. This Court agrees that the trial court *Page 13 
incorrectly inserted the child and spousal support amounts computed by the magistrate into its "Order," instead of the amounts stated in its "Findings of Fact" and "Conclusions of Law." Its order is modified to reflect the amounts in its "Findings of Fact" and "Conclusions of Law." See App. R. 12(A)(1)(a). Mrs. Dunlap's eighth assignment of error is sustained.
 CONCLUSION {¶ 31} The trial court's Order is modified to provide that the amounts of child and spousal support that Mr. Dunlap shall pay are the amounts set forth in its "Findings of Fact" and "Conclusions of Law." Its statement that "spousal support shall not remain under the jurisdiction of this court" is deleted. As so modified, the judgment of the Summit County Domestic Relations Court is affirmed.
Judgment affirmed as modified.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to Appellant. *Page 14 
 SLABY, P. J., WHITMORE, J. CONCUR *Page 1