[Cite as *In re L.B.S.*, 2019-Ohio-3312.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

IN RE: L.B.S.

C.A. Nos.    18AP0007
                18AP0010

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2015 JUV-G 000278

DECISION AND JOURNAL ENTRY

Dated: August 19, 2019

CARR, Judge.

{¶1}    Plaintiff Julee K. ("Mother") and Defendant Mark S. ("Father") have appealed from the judgment of the Wayne County Court of Common Pleas, Juvenile Division. This Court affirms.

I.

{¶2}    Mother and Father began dating in 2013. Although they were never married, one child, L.B.S., was born of their relationship on September 16, 2014. Subsequently, Mother and Father ended their relationship.

{¶3}    In March 2015, Mother filed a complaint seeking to be named the sole residential parent of L.B.S. and also seeking an award of child support. In April 2015, after Mother and Father temporarily resumed their relationship, Mother dismissed her complaint.

{¶4}    In August 2015, Father filed a motion for custody or shared parenting. In September 2015, Mother filed a motion seeking to be designated the sole residential parent and

also an award of child support. Mother also filed a motion for "temporary and permanent attorney fees[.]" Father thereafter filed a motion for a psychological evaluation of Mother. Subsequently, Mother requested a psychological/custody evaluation of the parties to be performed by Dr. Marianne Bowden. Mother requested that the Substance Abuse Subtle Screening Inventory be included in the evaluation. A magistrate issued an order granting the motions for psychological evaluations and ordered that Dr. Bowden conduct the evaluations and file a copy of her report with the trial court. The magistrate issued another order denying Mother's motion for temporary attorney fees. Mother did not move to set aside that order.

{¶5} The matter proceeded to a final hearing before a magistrate, held over three days. Dr. Bowden, Mother, and Father testified at the hearing. Dr. Bowden recommended that Mother be named the residential parent and that Father should receive visitation pursuant to the trial court's local rule. Dr. Bowden did not believe that shared parenting was in L.B.S.'s best interests in light of the parties' difficulties communicating.

{¶6} Subsequent to Dr. Bowden's testimony, Father moved to strike and/or exclude Dr. Bowden's testimony because of an alleged conflict of interest that Dr. Bowden failed to disclose. Father maintained that Dr. Bowden was biased against him. Following the final hearing date, both parties submitted written briefs.

{¶7} The magistrate issued a decision designating Mother as the sole residential parent and granting Father visitation pursuant to the trial court's local rule. The magistrate awarded Mother $1,912.03 per month in child support and the tax dependency exemption for 2016 and every year thereafter. The magistrate denied Mother's motion for permanent attorney fees. In addition, the magistrate ordered that Father should be responsible for Dr. Bowden's witness fee and the total cost of the evaluation. Finally, the magistrate denied Father's motion to strike

and/or exclude the testimony and evaluation of Dr. Bowden. The trial court issued a judgment entry mirroring the magistrate's conclusions.

{¶8} Both parties filed objections to the magistrate's decision. Father asserted that: (1) the magistrate abused its discretion in awarding Mother $1,912 in child support; (2) the magistrate abused its discretion in adding depreciation back into Father's income when calculating child support; (3) the magistrate abused its discretion in averaging Father's income over a three-year period; (4) the magistrate abused its discretion in awarding Mother the tax dependency exemption; (5) the magistrate abused its discretion in ordering Father to pay for Dr. Bowden's witness fee and the entire cost of the evaluation; and (6) the magistrate abused its discretion in failing to strike and/or exclude the testimony and evaluation of Dr. Bowden. Mother asserted that the magistrate abused its discretion in denying her request for attorney fees. Mother maintained that the decision denied her due process and equal protection of the law afforded to married or previously married women as provided by R.C. 3105.73. In addition, Mother asserted that she was entitled to attorney fees pursuant to R.C. 3123.17(B).

{¶9} After the transcript and exhibits were filed in the trial court, Mother and Father supplemented their arguments in support of their objections.

{¶10} The trial court overruled the objections. Subsequently, the trial court issued an entry labeled as a nunc pro tunc entry that reflected that the trial court adhered to its prior judgment entry but extended the deadline for Father to make certain payments outlined therein.

{¶11} Father and Mother both appealed the trial court's judgment and the appeals were subsequently consolidated. Father has raised six assignments of error, which will be addressed out of sequence to facilitate our review, and Mother has raised a single assignment of error.

II.

**Father's Appeal**

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY AWARDING $1,925 PER MONTH IN CHILD SUPPORT COSTS, IN ADDITION TO APPLICABLE PROCESSING CHARGES.

{¶12} Father asserts in his first assignment of error that the trial court erred in awarding Mother $1,925.00 per month in child support.[1] Father's argument centers around the trial court's finding concerning his income. Father appears to make two separate arguments: (1) that the trial court erroneously added depreciation back into his income for purposes of calculating child support; and (2) that the trial court erroneously averaged Father's incomes from 2013-2015 in calculating his income for purposes of calculating child support.

{¶13} "[W]e generally review a trial court's action on a magistrate's decision for an abuse of discretion, but do so with reference to the nature of the underlying matter." (Internal quotations and citations omitted.) *Brosky v. Krebs*, 9th Dist. Lorain No. 17CA011161, 2018-Ohio-5261, ¶ 6. "The propriety of a trial court's determination regarding child support is reviewed for an abuse of discretion." *Seegert v. Seegert*, 9th Dist. Summit No. 28932, 2018-Ohio-5119, ¶ 8. "'In determining the appropriate level of child support, a trial court must calculate the gross income of the parents.'" *Brosky* at ¶ 6, quoting *Stahl v. Stahl*, 9th Dist. Summit No. 27876, 2017-Ohio-4170, ¶ 19.

---

[1] We note that the trial court did not award $1,925 per month in child support; the trial court awarded $1,912.03 per month in child support.

## Background

{¶14} Father owns several businesses and rental properties. Among them is a restaurant in Wooster. In 2013, Father opened a second restaurant; however, that restaurant closed in 2014, and led to a substantial financial loss for Father. Father estimated that he lost close to $700,000 on the failed restaurant. Thus, Father's 2014 adjusted gross income, as reported on his tax returns, was -$73,146. Whereas, in 2013 Father's adjusted gross income was $151,871 and it was $190,784 in 2012.

{¶15} After adding back in numerous depreciation expenses, the lower court calculated that Father's income for child support purposes was $20,934 for 2014, $335,020 for 2013, and $338,706 for 2012. The lower court then averaged the three figures and came to an average income figure of $231,553.33 for purposes of calculating child support. Mother's gross income for child support purposes was calculated to be $20,800.

## Depreciation

{¶16} Gross income includes self-generated income. Former R.C. 3119.01(C)(7). "'Self-generated income' means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts." Former R.C. 3119.01(C)(13).

{¶17} Former R.C. 3119.01(C)(9) states:

(a) "Ordinary and necessary expenses incurred in generating gross receipts" means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity.

(b) Except as specifically included in "ordinary and necessary expenses incurred in generating gross receipts" by division (C)(9)(a) of this section, "ordinary and necessary expenses incurred in generating gross receipts" does not include

depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.

{¶18} This Court has concluded that, "to exclude the depreciation deduction from the calculation of gross receipts under R.C. 3119.01(C)(9)(b), the actual cash expenditure must be incurred in the same tax year. Absent evidence illustrating that the depreciation deduction represents actual cash expenses (and not noncash items) in the year the deduction was taken, R.C. 3119.01(C)(9) requires the court to include the depreciation deduction when computing the parent's gross income for that year." (Internal citation and quotations omitted.) *In re B.P.*, 9th Dist. Summit Nos. 27541, 27542, 2015-Ohio-4352, ¶ 11.

> Depreciation deductions on tax returns are, by themselves, insufficient evidence to show that money actually was expended as an ordinary and necessary business expense in the year the deduction was taken. This is in part because in many cases, a company depreciates buildings and equipment that it owns solely for the purpose of reducing its income taxes. Moreover, trial courts must be wary of the possible manipulation of the numbers contained on the [tax] return to conceal income which, as a practical matter, may be available for child support purposes. Accordingly, a parent claiming ordinary and necessary expenses for business equipment must present evidence demonstrating those purchases beyond the tax return itself. This evidence may include, among other things, business records and backup documentation explaining how the depreciation deduction was calculated, and what it represents.

(Internal quotations and citations omitted.) *In re B.P.* at ¶ 12. In addition, R.C. 3119.05(A) provides that "[t]he parents' current and past income and personal earnings shall be verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." "It was Father's burden, as the party claiming the business expense, to provide suitable documentation to establish the expense." (Internal quotations and citation omitted.) *In re B.P.* at ¶ 13.

**{¶19}** On appeal, in support of his argument, Father points to his tax returns, along with the accompanying schedules, and his testimony related to those returns. *See* R.C. 3119.05(A). Even if we were to assume that Father's documentation was sufficient, it is unclear on appeal which of the depreciation expenses Father is arguing were improperly added back to his income for purposes of calculating child support. *See* App.R. 16(A)(7). We remain mindful that it is Father's burden to demonstrate error on appeal. *See Younker v. Hayes*, 9th Dist. Summit No. 29010, 2019-Ohio-213, ¶ 9.

**{¶20}** The record is clear that the trial court added back several items of depreciation to each year it calculated Father's gross income. Those additions appear to include, inter alia, depreciation related to Father's rental properties and, for 2014, Father's horse racing enterprise. In his post-hearing brief, at least with respect to 2014 (which is the only year Father discussed), Father himself argued that certain depreciation expenses should have been added back to arrive at his gross income for child support purposes. Father maintained that he had no income for 2014, but nonetheless argued that "[f]or the purpose of calculating child support, Father's 'gross income' would be $65,737." Father asserted that that figure was "based on the depreciation from his rental properties and horse racing enterprises, which do not fall under the category of 'necessary and ordinary business expenses,' since it is not business equipment." On appeal, Father has not explained why the depreciation from his rental properties in 2013 and 2012 should be treated differently.[2] In his objections to the magistrate's decision, Father appeared to argue that different calculations should apply, notwithstanding his prior argument. It is not this Court's duty to speculate as to which figures Father might now believe should not have been included.

---

[2] Father did not have a horse racing enterprise in prior years.

{¶21} Given that Father argued below that at least some of the depreciation expenses should have been added to his income and the fact that he has not delineated on appeal which expenses he believes should not have been added back, we cannot conclude that Father has demonstrated that the trial court abused its discretion. Father's argument is overruled.

### Income Averaging

{¶22} Father also argues that the trial court erred in averaging his income over three years to calculate his income for child support purposes. Father acknowledges that averaging income is generally appropriate, but asserts that it is not so in his case in light of the substantial loss he suffered in 2014.

{¶23} Former R.C. 3119.05(H) states that, "[w]hen the court or agency calculates gross income, the court or agency, when appropriate, may average income over a reasonable period of years." "This Court had held that the decision as to the propriety of averaging a parent's income lies in the sound discretion of the trial court which is in the best position to weigh the facts and circumstances." *Morrow v. Becker*, 9th Dist. Medina No. 11CA0066-M, 2012-Ohio-3875, ¶ 37. "This Court has previously found it appropriate to average income where earnings are unpredictable or inconsistent." (Internal quotations omitted.) *Krone v. Krone*, 9th Dist. Summit No. 25450, 2011-Ohio-3196, ¶ 33. Examining Father's tax returns for 2012-2014, it is clear that Father's income was unpredictable and inconsistent and varied depending on the success (or failure) of his various businesses and undertakings. Accordingly, Father has not convinced us that the trial court erred in averaging his income over a period of three years.

{¶24} Father's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THE
FATHER TO PAY THE WITNESS FEE AND TOTAL COST OF THE

PSYCHOLOGICAL AND CUSTODY EVALUATIONS BY DR. BOWDEN FOR BOTH HIMSELF AND MOTHER.

**{¶25}** Father argues in his second assignment of error that the trial court abused its discretion by ordering him to pay Dr. Bowden's witness fee and the total cost of the evaluation done by Dr. Bowden. Father maintains that Mother should be required to pay for Dr. Bowden's testimony as she subpoenaed Dr. Bowden and should be required to pay for Mother's half of the evaluation.

**{¶26}** We begin by noting Father has cited no law in support of his assignment of error, aside from the general abuse of discretion standard of review. R.C. 3111.14 provides that "[t]he court may order reasonable fees for experts and other costs of the action and pretrial proceedings, including genetic tests, to be paid by the parties in proportions and at times determined by the court. The court may order the proportion of any party to be paid by the court, and, before or after payment by any party or the county, may order all or part of the fees and costs to be taxed as costs in the action." *See also* former Loc.R. 16(A) of the Court of Common Pleas of Wayne County, Juvenile Division[3] ("When psychological evaluations are ordered, the cost shall be paid by the parties, and not taxed as court costs. Payment arrangements are to be made between the service provider and the parties. Court orders as to the allocation of the responsibility of the payment of psychological evaluations may be reviewed at the final hearing upon the request of either party.").

**{¶27}** Based upon the incomes calculated by the trial court, Father is in a far better position to pay for these expenses. In fact, in Father's statement of facts, he acknowledges that

---

[3] That rule has been renumbered as rule 2.04(A) in the current rules; the substance is unchanged.

he is more financially stable than Mother. Overall, Father has not demonstrated that the trial court abused its discretion in allocating these fees to Father.

**{¶28}** Father's second assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING APPELLEE MOTHER THE RIGHT TO RECEIVE THE FEDERAL CHILD DEPEND[E]NCY EXEMPTION FOR THE CHILD.

**{¶29}** Father argues in his fourth assignment of error that the trial court abused its discretion in granting Mother the right to receive the federal child dependency exemption for L.B.S.

**{¶30}** "This Court reviews a trial court's allocation of a dependent child tax exemption under an abuse of discretion standard." *Loewen v. Newsome*, 9th Dist. Summit No. 28107, 2018-Ohio-73, ¶ 62.

**{¶31}** Former R.C. 3119.82 states in part:

Whenever a court issues, or whenever it modifies, reviews, or otherwise reconsiders a court child support order, it shall designate which parent may claim the children who are the subject of the court child support order as dependents for federal income tax purposes as set forth in section 151 of the "Internal Revenue Code of 1986," 100 Stat. 2085, 26 U.S.C. 1, as amended. If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.

{¶32} "While R.C. 3119.82 requires that the court designate which party receives the tax exemption, [u]nless the issue is raised by the parties, the trial court is not required to engage in any analysis under the statute unless it chooses to award the tax exemption to the non-residential parent." (Emphasis omitted. Internal quotations omitted.) *Loewen* at ¶ 64. "When there is a sole parenting situation, there is a presumption that the trial court should allocate the dependency exemption to the residential parent." *Id.* "The non-residential parent bears the burden to provide any information needed to overcome this presumption." *Id.* "'[I]n the absence of evidence showing that the nonresidential parent would receive a net tax savings from the dependency exemption, the court must employ the presumption that the dependency exemption belongs to the residential parent.'" *Stahl*, 2017-Ohio-4170, at ¶ 24, quoting *Dunlap v. Dunlap*, 9th Dist. Summit No. 23860, 2008-Ohio-3201, ¶ 13. As noted above, in the face of disagreement, "the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children." Former R.C. 3119.82.

{¶33} Here, the trial court designated Mother the sole residential parent. Accordingly, there was a presumption that she was entitled to the exemption. *See Loewen* at ¶ 64. On appeal, Father argues that he is entitled to the exemption because he has a higher earning potential and thus would receive a net tax savings.

{¶34} At the hearing, Father provided very limited testimony as to why it would be in L.B.S.'s best interest for Father to receive the exemption. Father stated that Mother "is not living on her own. [Father is] paying [his] house payment, [he is] paying real estate taxes for [his]

properties, and she is living alone with her parents." In addition, Father testified that he "believe[d] there would be a tax savings for [him] because [he is] the one paying for everything for [L.B.S]." Father, however, did not calculate what his net tax savings would be. In addition, Father did not address any of the other factors the trial court was required to consider. Under these circumstances, before it can be said that it was in L.B.S.'s best interest that Father claim the exemption, there must be evidence that Mother would not somehow benefit more than Father. *See Montgomery v. Montgomery*, 6th Dist. Huron No. H-06-035, 2007-Ohio-2539, ¶ 27-28 (noting that the ability to claim a dependent on the earned income credit could provide more of a benefit to one parent notwithstanding the other parent's higher income). While Father submitted his tax returns as evidence, which certainly demonstrate that Father earned more than Mother, Mother's tax returns were not admitted as evidence.

**{¶35}** Given the limited evidence that Father submitted on the issue, along with his limited argument, we cannot say that the trial court abused its discretion in concluding that Father failed to meet his burden to demonstrate that awarding him the exemption would be in L.B.S.'s best interest.

**{¶36}** Father's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING FATHER'S MOTION TO EXCLUDE THE PSYCHOLOGICAL TESTIMONY OF DR. BOWDEN.

**{¶37}** Father argues in his fifth assignment of error that the trial court abused its discretion in failing to exclude the testimony of Dr. Bowden.

**{¶38}** After Father's counsel requested a psychological evaluation for Mother, Mother's counsel also requested that Father undergo an evaluation. Mother's counsel, in his motion,

suggested that Dr. Bowden perform the evaluation. At the hearing on the issue, Mother's counsel explained that he suggested Dr. Bowden because she was the psychologist in the area that the trial court frequently used. At the end of the hearing on the issue, Father's counsel recommended to Father that Dr. Bowden perform the evaluations for reasons of "efficiency, speed, cost and she is independent." Father's counsel stated that he has had "her rule in favor of [his client] * * * but I've had her rule against a client[.]" Thereafter, Dr. Bowden was ordered to perform the evaluations.

{¶39} At the final hearing, Father's counsel asked Dr. Bowden how many times she had been employed by Mother's counsel to provide a report similar to the one in this case. Dr. Bowden responded:

> Actually, I have not, I think I have only been employed by him one time and that was for an attorney work product type of evaluation, it was not for court testimony and that I have done with almost all the attorneys at some point in time I have worked with them in some type of attorney work product but I did not testify in those. In these types of situations I am here as a forensic evaluator to assist the Court not either individual or the attorneys.

It was only after Dr. Bowden testified that Father filed a motion to strike and/or exclude the evaluation and testimony.

{¶40} We note that while Father sought to exclude both the testimony and evaluation of Dr. Bowden below, on appeal, Father only appears to assert the trial court erred in failing to strike the testimony of Dr. Bowden. Thus, even if this Court were to agree that the testimony should have been excluded, the evaluation was nonetheless admitted as evidence and that admission has not been challenged on appeal. Accordingly, we fail to see how the admission of the testimony affected Father's substantial rights in light of the unchallenged admission of the evaluation. *See* Civ.R. 61; *In re H.W.*, 114 Ohio St.3d 65, 2007-Ohio-2879, ¶ 11 ("The Rules of

Civil Procedure apply to custody proceedings in juvenile court except when they are clearly inapplicable[.]").

{¶41} Notwithstanding the foregoing, we still see no merit in Father's argument. To the extent Father has argued that Dr. Bowden's testimony failed to comply with Evid.R. 702, Father did not raise that argument below. *See Stevens v. Stevens,* 9th Dist. Medina No. 17CA0084-M, 2019-Ohio-264, ¶ 13 ("Arguments that were not raised in the trial court cannot be raised for the first time on appeal."); *see also In re A.M.*, 9th Dist. Lorain No. 16CA010995, 2017-Ohio-7653, ¶ 9-10.

{¶42} To the extent Father has alleged that Dr. Bowden's testimony should have been excluded because she had an alleged conflict of interest prohibited by R.C. 4732.021 related to her prior work for Mother's counsel, Father has not demonstrated that that particular provision applies to Dr. Bowden.

{¶43} R.C. 4732.021 states that "[a] member of the state board of psychology shall not engage in any conduct involving a conflict of interest with the member's board duties." R.C. 4732.021 appears to only apply to members of the state board of psychology. There are only nine members and they are appointed by the governor. *See* R.C. 4732.02. Father has pointed to no evidence in the record that Dr. Bowden was a member of the state board of psychology who was subject to R.C. 4732.021.

{¶44} Given all of the foregoing, Father has not demonstrated that the trial court abused its discretion in denying his motion to strike. Father's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING THE FATHER TO PAY FOR MOTHER'S HEALTH INSURANCE, DESPITE THE COUPLE NEVER BEING LEGALLY MARRIED.

{¶45} Father argues in his third assignment of error that the trial court abused its discretion in ordering Father to pay for Mother's health insurance.

{¶46} Father appears to be challenging a magistrate's order which "enjoined and restrained" Father "during the pendency of th[e] matter from terminating or discontinuing, directly or indirectly, the health insurance coverage of [L.B.S.] and [Mother]." We note that while Father did file an "objection" to the magistrate's "decision[,]" it was not timely. *See* Juv.R. 40(D)(2)(b) (stating that a motion to set aside a magistrate's order must be filed "not later than ten days after the magistrate's order is filed"). More importantly, Father has not pointed to anything in the magistrate's decision or the trial court's judgment entry indicating that Father has any ongoing obligation to supply Mother with health insurance. *See* App.R. 16(A)(7). Thus, we cannot say that Father has demonstrated reversible error. *See* Civ.R. 61.

{¶47} Father's third assignment of error is overruled.

### ASSIGNMENT OF ERROR VI

THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶48} Father argues in his sixth assignment of error that the decision of the trial court concerning the custody of L.B.S. was against the manifest weight of the evidence. We note that Father did not challenge the magistrate's decision to award custody to Mother.

{¶49} Juv.R. 40(D)(3)(b)(iv) provides:

Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

{¶50} Accordingly, "[w]hen a party fails to raise an issue in the party's objections to the magistrate's decision, it may not be raised for the first time on appeal." (Internal quotations and

citations omitted.) *In re A.M.*, 2017-Ohio-7653, at ¶ 9. Because Father failed to raise this issue in his objections to the magistrate's decision, he has forfeited all but plain error on appeal. Juv.R. 40(D)(3)(b)(iv); *see also In re A.M.* at ¶ 9. Father has not developed a plain error argument on appeal with respect to this issue, and we decline to undertake such an analysis on his behalf. *In re A.M.* at ¶ 10.

**{¶51}** Father's sixth assignment of error is overruled.

**Mother's Appeal**

**<u>ASSIGNMENT OF ERROR</u>**

THE TRIAL COURT DENIED THE APPELLANT DUE PROCESS AND EQUAL PROTECTION OF THE LAW IN DENYING [MOTHER'S] MOTION FOR TEMPORARY AND PERMANENT ATTORNEY FEES.

**{¶52}** Mother argues in her sole assignment of error that the trial court denied her due process and equal protection of the law by denying Mother's motion for temporary and permanent attorney fees.

**{¶53}** With respect to Mother's argument concerning temporary attorney fees, we note that that motion was denied by way of a magistrate's order. Mother did not file a timely motion to set aside the magistrate's order. *See* Juv.R. 40(D)(2)(b); *see also Nagel v. Nagel*, 9th Dist. Lorain No. 09CA009704, 2010-Ohio-3942, ¶ 26 (applying similar Civ.R. 53(D)(2)(b)). Accordingly, Mother has forfeited the argument and we decline to address it further. *See Nagel* at ¶ 26.

**{¶54}** As to Mother's motion for permanent attorney fees, a discussion of the procedural history is warranted. In Mother's final written argument following the hearing, Mother argued that she was entitled to attorney fees on two grounds: (1) "due process and equal protection" and (2) R.C. 3123.17(B) (stating that, "[w]hen a court issues or modifies a court support order, the

court may include in the support order a statement ordering either party to pay the costs of the action, including, but not limited to, attorney's fees, fees for genetic tests in contested actions under sections 3111.01 to 3111.18 of the Revised Code, and court costs"). As to her first ground, Mother maintained that R.C. 3105.73 violated her rights to due process and equal protection because it did not allow her to recover attorney fees because she had not been married. Notwithstanding her argument that she was denied due process and equal protection, Mother also argued that she could recover attorney fees under R.C. 3123.17(B).

{¶55} In the magistrate's decision, the magistrate asserted that Mother "request[ed] that the Court award attorney fees on the grounds of due process and equal protection." The magistrate concluded that "there is no statutory provision for the payment of attorney fees in a paternity action[ and t]here is no evidence in the record that indicates that [Mother's] rights to due process and equal protection have been violated." Thus, it does not appear that the magistrate considered whether Mother could recover attorney fees under R.C. 3123.17(B). The trial court entered judgment in accordance with the magistrate's decision and denied Mother's motion for permanent attorney fees.

{¶56} Mother filed an objection to the magistrate's decision, wherein she argued that the magistrate's decision denied her equal protection and due process and that the decision was contrary to R.C. 3123.17(B). The trial court summarily overruled the objections.

{¶57} On appeal, Mother has only argued that she was denied due process and equal protection; she has not challenged the trial court's denial of an award of attorney fees pursuant to R.C. 3123.17(B). Given the circumstances, it is possible the trial court concluded that R.C. 3123.17(B) would be applicable to Mother, but nonetheless determined that attorney fees were not warranted based upon the circumstances of this case. Mother has not argued that, assuming

the trial court found R.C. 3123.17(B) applicable, the trial court abused its discretion in concluding that she failed to demonstrate that she was entitled to relief. *See* App.R. 16(A)(7). Nor has Mother explained how she would be denied due process and equal protection under these circumstances. *See id.* Accordingly, we cannot say that Mother has demonstrated that the trial court denied her due process and equal protection under the facts before us.

**{¶58}** Mother's assignment of error is overruled.

### III.

**{¶59}** Father and Mother's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

> DONNA J. CARR
> FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

KENNETH C. MARTIN, Attorney at Law, for Appellant.

R.J. HELMUTH, Attorney at Law, for Appellee.